UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

_____

J. WHITFIELD LARRABEE,

                  *Plaintiff,*

v.

DONALD J. TRUMP,
President of the United States of America,
in his official capacity,
PAMELA JO BONDI, Attorney
General of the United States of America,
in her official capacity, and KRISTI NOEM,
Secretary of the Department of Homeland
Security of the United States of America,
in her official capacity,

                  *Defendants.*
_____

Case No. _____

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### I. PARTIES

1.      My name is J. Whitfield Larrabee and I am the plaintiff in this matter. I am an attorney admitted to practice law in the courts of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, the United States Court of Appeals for the First Circuit and the Supreme Court of the United States. I have represented clients in each of these Courts. I have also represented clients before the Federal Election Commission, Equal Employment Opportunity Commission and other federal agencies. The primary location of my law practice is in Brookline, Massachusetts where I am a resident.

2.      Defendant, Donald J. Trump (hereinafter "Trump") is the current President of the United States of America. He is sued in his official capacity.

1

3.      Defendant, Pamela Jo Bondi, (hereinafter "Bondi") is the current Attorney General of the United States of America. She is sued in her official capacity. Bondi is responsible for implementing and enforcing Trump's unconstitutional orders and policies as herein described.

4.      Defendant, Kristi Noem, (hereinafter "Noem") is the current Secretary of Homeland Security of the United States of America. She is sued in her official capacity. Noem is responsible for implementing Trump's unconstitutional orders and policies as herein described.

## II. JURISDICTION AND VENUE

5.      This court has federal question jurisdiction under 28 U.S.C., § 1331 as the case concerns the United States government and the constitution and laws of the United States.

6.      This court is the proper venue for this action under 28 U.S.C. § 1391(e) (1) due to my residency in this judicial district.

## III. <u>COMPLAINT</u>

## A. INTRODUCTION

7.      The defendants are engaged in unconstitutional schemes against a class of lawyers and law firms, including myself, who have opposed Trump or whom Trump perceives to be his adversaries. As part of these schemes, Trump has issued orders that usurp the power of the judiciary, adjudicate guilt, and impose fines and penalties on lawyers and law firms. With the assistance of Bondi, Trump acts as prosecutor, jury and judge to impose arbitrary and capricious penalties. Furthermore, Trump is using threats of extrajudicial punishment to extort tribute and ransom, with a value of hundreds of millions of dollars, from law firms. The tribute and ransom is paid indirectly to Trump through contributions and services, provided by the victimized law firms, to groups and political causes that he favors.

2

8.     There is no legal foundation for Trump's orders or his schemes; neither the Constitution, nor any statute, authorizes Trump to take these actions.

9.     Trump imposes penalties on lawyers and law firms without affording them any due process. Victims of his scheme receive no prior notice. There is no opportunity to be heard by a neutral decision-maker before penalties are imposed.

10.     Between 2016 and 2020, I launched a fusillade of more than 25 legal complaints, with state and federal agencies, against Trump and his associates. These complaints exposed violations of law by his administration, campaign, businesses and foundations. I have actively participated in, am currently engaging in, and intend to pursue lawful petitioning activities, free speech and associations that run afoul of Trump's unconstitutional orders and schemes.

11.     Trump's orders and schemes infringe upon my First Amendment rights and the rights of other lawyers and law firms by imposing and threatening to impose retaliatory penalties on lawyers based on the content of their speech, lawful associations and petitioning activities.

12.     Trump's ongoing attacks on lawyers and law firms have discouraged and prevented me and many others in the legal profession from representing certain clients and advocating for specific causes. His attacks have created an atmosphere of fear within the legal community and in society at large. Trump is diminishing my liberty, the liberty of other lawyers and the liberty of the American people with his orders and schemes.

13.     As a direct result of ongoing losses, harms and injuries caused by Trump's unlawful orders, threats and activities, I am requesting declaratory and injunctive relief in this action. This relief is necessary to clarify the rights and obligations of the parties involved, to deter Trump from engaging in unlawful actions against me and to permanently restrain the other defendants from putting Trump's unconstitutional orders and policies into effect.

## B. <u>STATEMENT OF FACTS</u>

### TRUMP'S THREATS

14.     On June 5, 2024, during an interview on Fox News, Trump said of his political opponents, "Look, when this election is over, based on what they've done, I would have every right to go after them…."

15.     On September 7, 2024, Trump posted to Truth Social, "WHEN I WIN, those people that CHEATED will be prosecuted to the fullest extent of the Law…. Please beware that this legal exposure extends to Lawyers…."

16.     On October 22, 2024, National Public Radio identified over "100 threats to investigate, prosecute, imprison or otherwise punish his perceived opponents" in Trump's rally speeches, interviews, and social media posts.

17.     On March 9, 2025, during an interview on Fox News, Trump said, "We have a lot of law firms that we are going to be going after." He said he intended to target law firms that were "dishonest" and "bad for the country."

### TRUMP'S MARCH 22 ORDERS

18.     On March 22, 2025, Trump issued a declaration and set of orders titled, "Preventing Abuses of the Legal System and the Federal Court." ("hereinafter referred to as "the March 22 Orders"). This document is attached hereto as Exhibit "A."

19.     The March 22 Orders state that they are "for the Attorney General and the Secretary of Homeland Security."

20.    The March 22 Orders, in part, provide:

Unfortunately, far too many attorneys and law firms have long ignored these requirements when litigating against the Federal Government or in pursuing baseless partisan attacks. To address these concerns, I hereby direct the Attorney General to seek sanctions against attorneys and law firms who engage in frivolous, unreasonable, and vexatious litigation against the United States or in matters before executive departments and agencies of the United States. I further direct the Attorney General and the Secretary of Homeland Security to prioritize enforcement of their respective regulations governing attorney conduct and discipline. See, e.g., 8 C.F.R. 292.1 et seq.; 8 C.F.R. 1003.101 et seq.; 8 C.F.R. 1292.19.

I further direct that, when the Attorney General determines that conduct by an attorney or law firm in litigation against the Federal Government warrants seeking sanctions or other disciplinary action, the Attorney General shall, in consultation with any relevant senior executive official, recommend to the President, through the Assistant to the President for Domestic Policy, additional steps that may be taken, including reassessment of security clearances held by the attorney or termination of any Federal contract for which the relevant attorney or law firm has been hired to perform services.

I further direct the Attorney General, in consultation with any relevant senior executive official, to review conduct by attorneys or their law firms in litigation against the Federal Government over the last 8 years.   If the Attorney General identifies misconduct that may warrant additional action, such as filing frivolous litigation or engaging in fraudulent practices, the Attorney General is directed to recommend to the President, through the Assistant to the President for Domestic Policy, additional steps that may be taken, including reassessment of security clearances held by the attorney, termination of any contract for which the relevant attorney or law firm has been hired to perform services, or any other appropriate actions. [emphasis supplied].

21.    The March 22 Orders specifically refer to attorney Mark Elias and the Steele "dossier." As former partner at the law firm of Perkins Coie, Elias led the firm's political law practice and represented prominent Democratic organizations and campaigns. Allegations in the Steele dossier were investigated by Special Counsel Robert Mueller's team. Elias was connected

5

to the Mueller investigation through his role in lawfully funding research by Fusion GPS that led to the creation of the Steele dossier.

22.     The March 22 Orders also specifically refer to the "immigration system" and make thinly veiled threats against lawyers who handle immigration cases.

23.     Although some of Trump's orders against specific law firms and lawyers occurred before he published the March 22 Orders, the March 22 Orders are the first orders that provide the general outlines of the schemes that the executive branch is using to go after lawyers and to punish them.

24.     The role of the Attorney General in Trump's orders and schemes is to investigate lawyers and law firms, identify alleged offenses warranting sanctions or discipline, and to recommend punishments to Trump for any alleged offenses that she identifies. The Attorney General's recommendation, in this context, functions as an indictment or a complaint.

25.     In response to the Attorney General's recommendations, Trump, acting as a judge and jury, finds facts and sentences lawyers and law firms to punishments. The penalties contained in Trump's orders, which amount to judgments, are put into effect by his agents in departments and agencies across the United States government.

26.     Trump has created a parallel judicial system in the executive branch. In that system, Trump and his agents fabricate new crimes and offenses based on alleged, often imagined, misconduct. He conducts his own prosecutions and trials of lawyers and law firms. The accused in these cases are convicted, in *absentia*. After Trump adjudicates these matters, he punishes the lawyers and law firms without any of the constitutionally guaranteed procedural safeguards normally protected by the judiciary in civil and criminal cases. Trump's orders, and the unconstitutional schemes, pose a substantial and imminent threat to me, as well as to other

members of the class of lawyers currently targeted by his actions.

## TRUMP'S UNCONSTITUTIONAL EDICTS

27.    During the time period from February 25, 2025 to March 27, 2025, Trump issued at least five declarations and orders against specific law firms and lawyers. The orders imposed penalties on the firms of Covington and Burling (Exhibit "B"), Perkins Coie (Exhibit "C"), Paul Weiss (Exhibit "D"), Jenner and Block (Exhibit "E"), and WilmerHale (Exhibit "F"). Each of these orders violates Article I, Section 9, Clause 3 of the Constitution because they are bills of attainder and *ex post facto* laws. The language of the orders against these law firms makes clear that they are a means of retaliating against the firms. Trump targeted the firms because they accepted clients who are Trump's political or legal opponents, or who he does not like because they employ lawyers who worked on causes opposed by him.

28.    Trump's orders against Perkins Coie allege that the firm engaged in "dishonest and dangerous activity" that purportedly impacted the country "for decades." The orders cite the firm's representation of the 2016 Democratic presidential campaign of Hillary Clinton and the hiring of Fusion GPS during that representation. Trump claims in the order that Fusion "manufactured a false 'dossier' designed to steal an election." At the signing of the orders, Trump's staff secretary presented the orders as part of an effort "to hold those who engaged in lawfare accountable." Trump replied that Perkins Coie had engaged in weaponization "against a political opponent" and stated that "it should never be allowed to happen again." See, Exhibit "C."

29.    Trump's order against WilmerHale states: "WilmerHale is also bent on employing lawyers who weaponize the prosecutorial power to upend the democratic process and distort justice. For example, WilmerHale rewarded Robert Mueller and his colleagues — Aaron Zebley, Mueller's "top aide" and "closest associate," and James Quarles — by welcoming them to the firm

7

after they wielded the power of the Federal Government to lead one of the most partisan investigations in American history." See, Exhibit "F." Special Counsel Robert Mueller, and the lawyers who worked for him, have immunity for their actions as prosecutors and were engaged in lawful and protected petitioning activity.

30.    In each of the five orders issued against the identified law firms and individual attorneys, defendant Trump explicitly and implicitly conveys that his actions are motivated by their representation of clients, hiring of lawyers and advocacy for causes with which he disagrees. Several of the orders also contain allegations of unlawful discrimination and other violations of law as pretexts for retaliating against lawyers and law firms. The orders form a pattern of retaliation and punishment directed at lawyers who were Trump's adversaries based on their First Amendment activities.

31.    Some of the orders that Trump issued in February and March of 2025 imposed severe penalties on lawyers and law firms based on allegedly discriminatory diversity, equity and inclusion ("DEI") policies and programs.

32.    A March 8, 2025 fact sheet issued by the White House quoted the President stating, "We will terminate every diversity, equity, and inclusion program across the entire federal government." Trump's recent orders and actions to terminate diversity, equity, and inclusion programs, policies and language now extend to private lawyers and law firms.

33.    While the EEOC may have a role in regulating DEI policies, and certainly has a role in enforcing federal anti-discrimination laws, there is no authority for Trump to regulate my DEI programs and policies directly from the White House. Trump has no authority to sanction private lawyers and law firms under the framework of anti-discrimination law because he does not approve of a DEI policy, a DEI program or DEI language.

34.     Trump has used orders to prohibit undefined diversity, equity and inclusion policies and practices. These orders fail to provide a person of ordinary intelligence fair notice of what is prohibited. They are so vague and lacking in standards that they authorize and encourage seriously discriminatory enforcement. Trump's orders and policies prohibiting diversity, equity and inclusion programs are so vague, undefined and overbroad that they violate my rights under the First Amendment and the Due Process Clause of the Fifth Amendment. Trump's orders, policies and statements make clear that even using the words "diversity, equity and inclusion" is likely to lead to the imposition of penalties. This type of censorship is prohibited by the First Amendment.

35.     Trump has recently imposed sanctions on various lawyers and law firms, as outlined in the attached orders. These sanctions include: (1) revoking access to federal buildings; (2) prohibiting federal employees from meeting or engaging with members and employees of certain the law firms; (3) ordering the termination of government contracts with lawyers and law firms; (4) ordering the termination of the contracts of law firm clients, thereby driving away current and prospective clients, and, (5) suspending security clearances of lawyers.

36.     28 U.S. Code § 1927 provides: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

37.     The penalties that Trump has imposed on law firms and attorneys and is threatening to impose are impermissible because the statute only authorizes a court to impose such penalties. Furthermore, the penalties Trump has imposed and is threatening to impose exceed the restitution that attorneys can be required to pay under 28 U.S. Code § 1927.

9

38.     Due to the imposition of sanctions and punishments on lawyers and law firms specified in Trump's recent orders, the targeted firms have suffered millions of dollars in financial losses, have lost clients who have terminated their relationships with the firms, have suffered damage to their reputations, their lawyers have been prevented from meeting with federal lawyers and officials, their ability to recruit new lawyers has been harmed, and they have suffered other substantial injuries.

39.     Trump's recent orders are riddled with false and defamatory statements about the lawyers and law firms targeted in the orders, causing them reputational damage.

40.     At least three law firms, Perkins Coie, Jenner and Block and WilmerHale have obtained temporary restraining orders from federal judges blocking Trump's orders because they are unconstitutional.

## TRUMP'S EXTORTION SCHEME

41.     Trump is using unconstitutional orders, threats, intimidation and coercion to extort hundreds of millions of dollars from lawyers and law firms. Trump's threats and penalties are so severe that leaders of powerful law firms have groveled before him, submitted to his demands and agreed to pay ransom in order engage in the practice of law. Trump has corruptly used threats, coercion, duress and undue influence to force law firms to submit to his extortionate demands.

42.     Trump's March 14, 2025 orders against the law firm, "Paul, Weiss" instructed Trump's agents to take steps to cancel government contracts of the firm and the firm's clients, ban the firm's lawyers and employees from federal buildings, suspend security clearances and take other actions against the firm and its employees.

43.     The orders threatened to financially harm and to bankrupt Paul, Weiss. The firm employs over 1,000 lawyers.

44.     On or about March 20, 2025, the Chairman of Paul, Weiss went to the White House and agreed to acknowledge "wrongdoing" by one of the firm's former partners, Mark F. Pomerantz. Pomerantz had tried to build a criminal case against Trump several years ago while working at the Manhattan district attorney's office. The agreement also provided that Paul Weiss would represent clients no matter their political affiliation and contribute $40 million in legal services to causes Mr. Trump has championed, including "the President's Task Force to Combat Antisemitism, and other mutually agreed projects." The agreement with Paul, Weiss was obtained under duress.

45.     On or about March 20, 2025, the White House issued a statement: "The president is agreeing to this action in light of a meeting with Paul, Weiss Chairman, Brad Karp, during which Mr. Karp acknowledged the wrongdoing of former Paul, Weiss partner, Mark Pomerantz, the grave dangers of Weaponization, and the vital need to restore our System of Justice."

46.     In a statement on March 20, 2025, Pomerantz truthfully said, "I engaged in no wrongdoing by working as a prosecutor to uphold the rule of law."

47.     On March 27, 2025, the New York times reported, "The elite law firm Skadden, Arps, Slate, Meagher & Flom ["Skadden"] has had discussions with President Trump's advisers about a deal to avert the type of executive order that the White House has been imposing on many of its competitors, according to five people briefed on the matter who were not authorized to speak publicly about private conversations." This report of the New York Times is true. Skadden employs about 1,700 lawyers. Skadden assisted a plaintiff in a defamation lawsuit, on a pro bono basis, against right-wing commentator Dinesh D'Souza. The suit related to D'Souza's film, "2000 Mules," that promoted debunked conspiracy theories about the 2020 election.

48.     On March 28, 2025, Trump said Skadden would provide $100 million in pro bono work on issues that he supports, heading off an expected executive order akin to those he aimed at the other firms. "This was essentially a settlement," Trump said. "We appreciate Skadden's coming to the table, as you know other law firms have likewise settled the case. The terms of the so-called "settlement" were unconscionable and were obtained under duress under the threat of unconstitutional orders like those imposed on Perkins Coie and other firms.

49.     An executive partner of Skadden, Jeremy London, said in a statement that the firm "engaged proactively with President Trump and his team in working together constructively to reach this agreement." Trump also issued a statement from the firm, in which it declared a "strong commitment to ending the weaponization of the justice system and the legal profession."

50.     On April 1, 2025, the White House announced an "agreement" with Willkie Farr & Gallagher ("Willkie"), a law firm that employs about 1,200 lawyers. The White House announced that the firm will provide $100 million in free legal services to causes Trump supports including veterans and combating anti-Semitism. The agreement with Willkie was obtained under duress under the threat of unconstitutional orders like those imposed on Perkins Coie and other firms.

51.     The Associated Press reported that: "Willkie is home to Doug Emhoff, the husband of 2024 Democratic presidential nominee Kamala Harris, and Timothy Heaphy, who was chief investigative counsel to the House of Representatives committee that investigated the Jan. 6, 2021 riot at the U.S. Capitol. The firm also represented two former Georgia election workers in a successful defamation lawsuit against former New York Mayor Rudy Giuliani." This report of the Associated Press is true.

52.    An internal email from Willkie, obtained by the Associated Press, states:

> While the agreement ultimately reached with the Administration
> focuses on activities that are already in place at our Firm, similar
> agreements at peer firms have been publicly criticized, and there is
> heightened conversation across our industry as law firms grapple
> with the consequences of potential Executive Orders and the impact
> for their clients, their employees and their businesses." The email
> also said, "In making this difficult decision, we concluded, after due
> consideration of the implications of each possible course of action,
> that accepting the Administration's final proposal was the path that
> best serves our clients' needs and protects the Firm's various
> stakeholders, avoiding potentially grave consequences.

53.    The email also says that leaders of Wilkie learned on March 31, 2025 that they would be targeted by an executive order like the one leveled at other major firms over the last month.

54.    On April 11, 2014, the New York Times reported:

> Five more prominent law firms facing potential punitive action by
> President Trump reached deals on Friday with the White House to
> provide a total of $600 million in free legal services to causes
> supported by the president. Four of the firms — Kirkland & Ellis,
> Latham & Watkins, A&O Shearman and Simpson Thacher &
> Bartlett — each agreed to provide $125 million in pro bono or free
> legal work, according to Mr. Trump. A fifth firm, Cadwalader,
> Wickersham & Taft, agreed to provide at least $100 million in pro
> bono work.

This report of the New York Times is true.

55.    The agreements with Kirkland & Ellis, Latham & Watkins, A&O Shearman, Simpson Thacher & Bartlett, and Cadwalader, Wickersham & Taft were obtained under duress under the threat of unconstitutional orders like those imposed on Perkins Coie and other firms.

56.    Trump's deliberate scheme to extort money from lawyers and law firms is an egregious violation of his oath to faithfully execute the laws of the United States. His extortion scheme is depriving me and other constituents of his honest services and is betrayal of the public trust that we are owed. He violated our right to honest and ethical representation and governance.

## LITIGATION AGAINST TRUMP AND BONDI

57.    There is an imminent and substantial threat that Trump and Bondi will unlawfully retaliate against me and impose penalties on me, as Trump has done to other lawyers and law firms who have litigated against him, because of complaints I filed against Trump and Bondi in 2016.

58.    In early June of 2016, I learned about a payment that Bondi sought from Trump in 2013. At the time, Bondi was the Attorney General of Florida and Trump was a candidate for President. When Bondi solicited the payment, her office was reviewing more than 20 fraud complaints against companies associated with Trump, including Trump University and the Trump Institute. Shortly after Bondi's request, the Donald Trump Foundation issued a $25,000 check, signed by Trump, to the electioneering fund Justice for All, established under Florida law for Bondi's benefit. Nancy Watkins, the fund's treasurer, was also the treasurer for Bondi's political campaign. The payment was illegal under federal law, and likely Florida law, as the Donald Trump Foundation, being a charity, was prohibited from making political contributions. Bondi's office soon announced that it was not taking action on the many fraud complaints against Trump related business. This coincided closely with the fund's receipt of the payment. In light statements Trump previously made, where he publicly bragged about bribing politicians, I concluded that that the transaction was corrupt, illegal and amounted to bribery.

59.    I decided to file a series of legal complaints against Trump and Bondi with state and federal agencies because of what I learned.

14

60.     Around June 8, 2016, I filed complaints against Bondi with the Florida State Bar, the Florida Ethics Commission, and the Florida Division of Elections. I alleged violations of ethics rules, laws governing elected officials, and election laws. These complaints were widely publicized by news media in print, television, and internet publications. After some litigation, these complaints were terminated by each of the agencies.

61.     A few weeks after I filed three complaints against Bondi, I filed at least six complaints against Trump and Bondi alleging that they committed crimes, including bribery, fraud and criminal conspiracy. I filed complaints against them with: (1) the U. S. Attorney for the Eastern District of New York, (2) the Public Integrity Section, U.S.Department of Justice, Criminal Division, (3) the U.S. Attorney for the Northern District of Florida, (4) The Attorney General of New York, (5) the Florida Office of Statewide Prosecution and (6) the Florida State Attorney in Tampa. These complaints were also widely publicized by news media in print, television, radio and internet publications.

62.     Pursuant to an executive order from the Governor of Florida, Rick Scott, State Attorney Stephen Russell was assigned to review one of my bribery complaints on December 26, 2016. Russell's office conducted minimal investigation and reported on April 6, 2017 that no further action should be taken. By the time Russell was assigned to investigate the matter and the report issued, it was too late to charge Trump with bribery under the applicable statute of limitations.

63.     I believe that several of the complaints I filed against these politicians were not thoroughly investigated or promptly acted upon because of Trump's immense wealth and their significant political influence.

## LITIGATION RELATED TO SPECIAL COUNSEL
## ROBERT MUELLER'S INVESTIGATION

64.    Trump has repeatedly attacked, retaliated against and imposed punishments on lawyers and law firms connected to Special Counsel Robert Mueller's investigation into Russian interference in the 2016 election. ("the Mueller Investigation").

65.    There is an imminent and substantial threat that Trump will retaliate against me and impose unlawful penalties on me because of my proximity and assistance to the Mueller Investigation.

66.    On or about August 17, 2016, I submitted an Information Referral, Form 3949-A, and a written complaint, with the Internal Revenue Service, alleging that Paul Manafort, Jr. ("Manafort") evaded income taxes on $12.7 million he was paid by the Ukraine Party of Regions and that he engaged in other federal tax law violations. Manafort was one of the top managers of Trump's 2016 presidential campaign. He was at the center of an alleged conspiracy between the Trump campaign and the government of Russia.

67.    In 2017, I learned of facts that led me to believe that Manafort was involved in violating federal election laws in connection with campaign contributions he and other lobbyists made to a U.S. Senator and to certain members of the U.S. House of Representatives.

68.    Based on this information, in 2017 I submitted a complaint against Representatives Dana Rohrabacher and Edward Royce to the Office of Congressional Ethics. I provided a copy of the complaint to Special Counsel Robert Mueller because it related to his investigation. I also urged him to investigate the complaint's subject matter. The ethics complaint concerned the Representatives' acceptance of campaign contributions from lobbyists representing Russia aligned foreign nationals from Ukraine, including Manafort.

69.     In 2017, I also submitted a complaint against Rohrabacher, Royce, Senator James Risch, Manafort and others to the Federal Elections Commission ("FEC"). The FEC complaint was based upon the same foundation as the complaint to the Office of Congressional Ethics.

70.     Around 2017 and 2018, I filed three complaints against Manafort with the Statewide Grievance Committee in Connecticut, a body responsible for disciplining lawyers in that state. The complaints related to matters that were investigated by Mueller's office. In connection with my third complaint against him, I participated in proceedings that led to Manafort's permanent resignation from the Connecticut Bar in 2019.

71.     Manafort was prosecuted for crimes by Special Counsel Mueller's team of lawyers. On or about August 21, 2018, Manafort was convicted of tax crimes for failing to report millions in income for work he did in Ukraine, concealing funds in foreign accounts and filing false tax returns. Manafort was prosecuted by Special Counsel Mueller's office for other crimes and convicted of some of those crimes as well. He was sentenced to federal prison for a number of years based on these convictions.

72.     Trump pardoned Manafort for his federal crimes in 2020.

### LITIGATION RELATED TO TRUMP'S BUSINESSES, FOUNDATIONS, ADMINISTRATION, FAMILY & ASSOCIATES

73.     The threat that Trump will unlawfully retaliate against me and impose penalties on me is elevated because of complaints that I filed against his businesses, foundations, family members, administration and associates.

74.     On or about June 12, 2017, I filed a complaint with the New York Attorney General against Donald J. Trump, Eric F. Trump, The Eric Trump Foundation, Donald J. Trump Foundation, Inc., The Trump Organization, Inc. and Trump National Golf Club LLC alleging that

these individuals, business and charities engaged in larceny by embezzlement, scheme to defraud, misappropriation and conversion, and, breach of fiduciary duty. These allegations related to the embezzlement and misappropriation of money and the conversion of the valuable charitable property of The Donald J. Trump Foundation, Inc. and The Eric Trump Foundation for the private benefit of Trump and his son, Eric Trump.

75.     Following these allegations, The Eric Trump Foundation dissolved in 2017.

76.     In 2018, the Donald J. Trump Foundation was dissolved under court supervision following legal action initiated by the New York Attorney General. The lawsuit alleged a pattern of unlawful conduct, including self-dealing, improper use of charitable funds for personal and political purposes, and failure to fulfill fiduciary responsibilities. As part of the settlement, the foundation agreed to its dissolution, with remaining assets distributed to court-approved charitable organizations. Additionally, Trump admitted to misusing foundation funds and was ordered to pay $2 million in damages.

77.     On or about January 31, 2019, I filed a complaint with the New York Attorney General against Donald Trump, Donald Trump, Jr., Eric Trump, The Trump Corporation and Donald J. Trump For President, Inc. alleging that the respondents violated New York law prohibiting business corporations from engaging in the practice of law.

78.     This complaint was based on reports I learned of, filed by Donald J. Trump for President, Inc. with the Federal Election Commission, stating that The Trump Corporation received $178,300 in payments for legal consulting from Donald J. Trump for President, Inc. in 2017 and 2018.

79.     In 2022, Allen Weisselberg, the Chief Financial Officer of the Trump Organization, entered a plea of guilty to 15 criminal charges, including grand larceny, criminal tax fraud, and

falsifying business records. He was sentenced to five months in prison. Subsequently, in 2024, Weisselberg pleaded guilty to perjury and was sentenced to an additional five months in prison.

80.    Throughout Trump's first term, in my individual capacity, and on behalf of more than 20 clients, I submitted complaints with state and federal agencies against Trump and people in his circle. I submitted complaints against former White House Chief of Staff Reince Priebus, former Attorney General Jeffrey Session, former attorney Rudy Giuliani, former National Security Advisor Michael Flynn, former Internal Revenue Service Commissioner Charles Rettig and former Administrator of the Environmental Protection Agency Scott Pruitt and other individuals and organizations.

81.    After Trump was defeated in the 2020 election, I suspended most of my activities as a government watchdog and focused my law practice primarily on employment discrimination cases. When Trump was elected to a second term, I decided to resume my work as a watchdog.

82.    On or about February 20, 2025 I filed a complaint against James Rodden ("Rodden"), Assistant Chief Counsel for U.S. Immigration and Customs Enforcement ("ICE"). In filing this complaint against an official in the Trump administration, I am opposing Trump's immigration policies and am highly likely to be punished for doing this due to his crusade against attorneys and recent orders. In the March 22 Orders, Trump threatens to punish lawyers opposed to his immigration policies.

83.    I filed my complaint against Rodden with the ICE's Office of Professional Responsibility and with the Office of Disciplinary Counsel, Board of Professional Responsibility of the District of Columbia Court of Appeals. Rodden is licensed to practice law in the District of Columbia and is likely subject to disciplinary action there.

84.     My complaint alleges that Rodden engaged in unethical conduct by operating a social media account on "X," under a pseudonym, and posting racist, xenophobic and hateful messages on the site. I alleged in my complant that Rodden's conduct and bias violated the Rules of Professional Conduct in the District of Columbia, undermines the integrity of the immigration justice system and interferes with the administration of justice.

85.     A CBS news report about my complaint against Rodden caused negative publicity for the Trump administration regarding the way it treats immigrants. The negative publicity caused by my complaint puts me at increased risk of being retaliated against and punished by Trump.

86.     On information and belief, ICE suspended Rodden from his job pending an investigation of the allegations in my complaint.

## DIVERSITY EQUITY AND INCLUSION

87.     There is a substantial and imminent threat that Trump will impose penalties on me because of my diversity, equity and inclusion policy and program.

88.     I have a diversity, equity and inclusion policy and program that includes: (1) hiring a diverse set of qualified employees and contractors from different backgrounds; (2) reaching out to and representing people who have historically been marginalized and discriminated against because of their race, national origin, gender, sexuality, immigration status and disabilities; (3) working to eradicate discrimination against marginalized people by initiating lawsuits and making complaints to state and federal agencies; (4) taking other lawful actions to remove barriers that have historically led to unequal outcomes and, (5) creating an environment where people from all backgrounds feel welcome. This policy and program is part of my mission that I have pursued for more than 36 years an active lawyer.

89.    My diversity, equity and inclusion policy and program is a mode of expression and association protected by the First Amendment that the Trump administration cannot lawfully prohibit under the guise of Preventing Abuses of the Legal System and the Federal Court.

## INJURIES

90.    The sanctions and discipline threatened in Trump's orders injure me by interfering with the independent professional judgment, loyalty and zealous representation that I owe to my clients under the Rules of Professional Responsibility that govern my conduct as an attorney.

91.    Trump's schemes and orders directly injure me by subjecting me to unlawful regulation of my professional conduct, curtailing my activities as a lawyer and creating uncertainty regarding the ethical rules that I am bound to obey.

92.    Trump's orders and his unconstitutional schemes injure me by interfering with my law practice and by causing me to decline to represent some clients and cease advocating for particular causes. They injure me by infringing on my right to practice my profession and earn my living as a lawyer.

93.    There is a growing need for assistance in the field of immigration law due to a recent increase in deportations, arrests and other government action against immigrants. I have some knowledge and skill in the area of immigration law. As a result of current events, I intended to represent clients in their immigration law cases and I would like to do so in the future. I have been deterred from doing this by the defendants. Trump's orders and threats of penalties are injuring me by infringing on my right to associate for the purpose of assisting people who seek legal redress for infringements of their constitutionally guaranteed rights.

94.    Between March 25, 2025 and April 7, 2025, I was approached by two different clients, Client A and Client B. Each of these clients was seeking confidential advice and

representation regarding issues related to visas and immigration. I declined to represent each of these clients and referred them to another lawyer because of Trump's threats and orders against lawyers. I declined to represent them because I was specifically afraid that Trump and Bondi might take steps to retaliate against them through the Department of Justice or the State Department if I represented these immigrants. In orders issued against Perkins Coie and other firms connected to the Mueller Investigation, Trump retaliated against the firms by making threats against and imposing penalties on their clients. Trump's threats and orders create an ethical quandary for me because I don't want to jeopardize my clients by exposing them to known risks that are a result of my present and prior petitioning and political expression. Through broad orders and threats, the defendants have violated my clients' and my own freedom of speech, freedom of association, and right to petition in these specific cases.

95.     I have delayed volunteering my legal services to clients through a non-profit called PAIR (Political Asylum/Immigration Representation), due to Trump's threats, orders and the penalties he has imposed on law firms and lawyers whom previously opposed him. With the help of volunteer lawyers, PAIR provides free immigration services to indigent asylum seekers and detained immigrants. For the same reasons as I declined to represent Client A and Client B, I am declining to offer my services to clients through PAIR. This is an injury to me and to the clients that I will not represent because of the defendants actions.

96.     The Boston Immigration Court is located at the JFK Federal Building in Boston. The building is owned and managed by the U.S. General Services Administration. If I am prohibited from entering federal buildings by Trump, as has recently occurred with other attorneys and law firms, I will not be able to properly represent clients with cases before the immigration court. I don't want to undertake representing new clients, as these clients may be harmed if I am

prevented from properly representing them by being banned from federal buildings. By threatening me with being banned from federal buildings, Trump has injured me.

97.    If federal officials are prohibited from communicating with me, as has occurred with other lawyers and law firms subject to Trump's recent orders, then I will not be able to properly represent my clients. I don't want to undertake representing new clients in immigration cases, as these clients will likely be harmed if I am prevented from communicating with officials in the Department of Justice, the State Department or elsewhere in the federal government. By threatening me with being prevented from communicating with federal officials and employees, Trump has injured me.

98.    Trump's orders and statements prohibiting DEI policies, and threatening sanctions against lawyers who have such policies, abridges my freedom of speech, my freedom association and my right to petition the government for redress of grievances. My DEI policy and program is one of the means by which I communicate my values to potential clients, employees and contractors. Prohibiting my DEI policy and program is causing damage to my reputation, a loss of goodwill in the community and a loss of valuable clients. The threat of sanctions and penalties for having a DEI policy and program and using the words diversity, equity and inclusion has a chilling effect on my speech and petitioning activities. By prohibiting DEI policies at law firms, Trump is censoring my speech. Although I have a DEI policy, Trump's threats of prosecution and orders have caused me to capitulate to his demands and decline to represent particular clients. Trump has injured me by forcing me to abandon my DEI program and policy in those cases.

99.    Trump's orders and schemes threaten me with penalties for having DEI policies, representing certain clients, and advocating for particular causes and they arbitrarily interfere with my right to pursue lawful employment and engage in my chosen occupation. They deprive me of

23

the right to work as a lawyer and to support myself while doing so. All of these are injuries.

100.    Through his orders, schemes and threats, Trump has caused me substantial and ongoing psychological and mental injuries. Trump holds an extremely powerful office as President and that gives him an exceptional capacity to cause fear, distress and injury by threatening, intimidating, and using coercion on people and lawyers who are vulnerable to harm. He has made specific, targeted and credible threats and actual attacks on lawyers and law firms. Due to my past and present activities, as a lawyer and private citizen, there is a substantial, imminent and objective threat that I will be subjected to sanctions and punishments that Trump is explicitly and implicitly threatening impose on lawyers. Trump's crusade against lawyers like me, who have been his adversaries, puts me in his crosshairs. He is likely to pull the trigger at any time. As a result, I have suffered from ongoing fear, anxiety, apprehension, worry and other emotional distress. By impairing my independent judgment as a lawyer, Trump has caused me to suffer from ongoing mental injuries.

101.    Trump's actions are designed to deter both government officials and private lawyers from participating in or carrying out new inquiries into his conduct. Trump's purposes are so obvious to the legal community that many lawyers and law firm leaders are afraid to speak out. On March 7, 2025, Law.com reported that "most law firm leaders are choosing to stay anonymous when speaking about the administration's orders[.]" Trump is silencing his critics with unlawful orders, penalties and threats. By threatening me and other attorneys in my class whom have been Trump's adversaries, and by unlawfully retaliating against his adversaries in the legal field due to their First Amendment activities, Trump has created a menacing atmosphere and had chilling effect on my First Amendment activities. In this way, Trump has injured me by infringing on my First Amendment rights.

102.    I am monitoring the Trump administration closely, and would like to file complaints and engage in petitioning activity involving the administration. But, Trump is injuring me by deterring me from filing complaints and from taking other actions because of his orders and threats.

103.    Trump is injuring me by depriving my clients and threatening to deprive my potential clients of independent advice from an attorney of their choice in violation of their right to counsel.

104.    Trump's extortion scheme is causing me injury by corruptly depriving me and my clients of his honest services as a government official.

105.    Trump has engaged in conduct that creates a case or controversy regarding the parties' rights and obligations that is ripe for adjudication under the Declaratory Judgment Act, 28 U.S.C. § 2201, and,

106.    Trump has caused and is causing me to suffer from other concrete, identifiable, irreparable and ongoing injuries as are described in this complaint and can be inferred from it.

### D. CAUSES OF ACTION

### COUNT 1

### *ULTRA VIRES* EXECUTIVE ACTION

### UNCONSTITUTIONAL EXERCISE OF JUDICIAL AUTHORITY

107.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

108.    This cause of action and the other causes of action are asserted against all of the defendants.

109.   The President's authority to act must stem either from an act of Congress or from the Constitution itself.

110.   There is no enumerated or inherent executive authority from the Constitution that allows presidents to regulate and to sanction lawyers for professional misconduct.

111.   Regulating the practice of law is not part of the President's core or incidental powers that are necessarily implied from the nature of the functions.

112.   Trump's orders against lawyers and law firms do not identify any constitutional or statutory source of authority.

113.   The Judicial Branch has the inherent authority to regulate the practice of law and has traditionally regulated it. This authority includes the ability to fashion an appropriate sanction and discipline for conduct which abuses the judicial process. No statute authorizes Trump's actions in imposing sanctions and discipline on lawyers for their professional conduct, and no statute authorizing them would be valid, because the power to sanction and discipline lawyers for their professional conduct rests with the federal and state courts.

114.   Article III of the Constitution vests the judicial Power of the United States in the federal courts. That power enables courts to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.

115.   There is no authorization in the U.S. Constitution for presidents to arrogate judicial power unto themselves and to pronounce the guilt of other persons or groups based on the presidents' own beliefs or opinions.

116.   After insuring due process, it is the role of courts, not presidents, to impose punishments.

26

117.    Trump's orders against lawyers and law firms set forth in Exhibits "A," "B," "C," "D,""E," and "F," and his schemes, as reflected in his statements and actions outside of those orders, are *ultra vires* because there is no constitutional or statutory authorization empowering Presidents to retaliate against and punish lawyers for representing clients.

118.    Trump's orders against lawyers and law firms set forth in Exhibits "A," "B," "C," "D," "E," and "F," and his schemes, as reflected in his statements and actions outside of those orders, are *ultra vires* because there is no constitutional or statutory authorization empowering Presidents to regulate the practice of law in the ways authorized by the orders.

119.    Trump's orders against lawyers and law firms set forth in Exhibits "A," "B," "C," "D,""E," and "F," and his schemes, as reflected in his statements and actions outside of those orders, are *ultra vires* because there is no constitutional or statutory authorization empowering Presidents to regulate diversity, equity and inclusion practices in the ways authorized by the orders.

120.    The defendants' *ultra vires* executive action, as described herein, is an unconstitutional exercise of judicial authority that has caused ongoing harm and injury to me, to my clients and to people who would like to be and potentially will be my clients.

## COUNT II

## DEPRIVATIONS OF DUE PROCESS UNDER THE FIFTH AMENDMENT

121.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

122.    This cause of action and the other causes of action are asserted against all of the defendants.

123.    Trump's orders and schemes create a substantial and imminent threat that he will impose severe penalties upon me without notice or an opportunity to be heard in denial of my right to due process of law.

124.    Based on the vague language in the March 22 Orders, and the actual punishments that Trump has imposed upon law firms in February and March of 2025, Trump could potentially impose an extraordinarily wide range of punishments on whichever lawyers and law firms that he chooses to attack. The vagueness and open ended nature of Trump's orders creates excessive and unreasonable uncertainty regarding the conduct that is prohibited by the regulations and the potential punishments that lawyers and law firms will suffer if they violate them. Trump's orders are so unconstitutionally vague and overly broad that they fail to reasonably describe the conduct that is prohibited and have a chilling effect on freedom of speech.

125.    Trump's orders do not provide me with a basis to understand what conduct is prohibited or how to avoid further sanctions in the future. The threat of sanctions and punishment for "diversity, equity and inclusion" is unconstitutionally vague and fails to provide me with adequate notice of the prohibited conduct.

126.    Trump's orders, schemes, crusade, and course of action violate my clients' rights under the Fifth Amendment and the common law to be zealously represented by counsel and to the independent judgment of counsel.

127.    The improper purpose and absence of any legitimate justification demonstrates that Trump's orders and schemes are an abuse of power that shocks the conscience, such that they cannot be justified by any level of process. By arbitrarily interfering with my right to pursue lawful employment and engage in my chosen occupation, and threatening to do so, the defendants are

violating my right to substantive due process.

128.    Trump's orders, schemes, crusade, and course of action have deprived me of liberty and property without due process of law in violation of the Fifth Amendment to the U.S. Constitution.

129.    Trump's orders and schemes create a substantial and imminent threat that I will be selectively prosecuted by Trump in violation of my right to equal protection of the law.

130.    Trump's orders, schemes, crusade, and course of action involve selective prosecution and deny me equal protection in violation of Due Process guaranteed by the Fifth Amendment to the Constitution.

131.    I have suffered and I am suffering ongoing losses, harms and injuries as a result of being deprived of due process of law by the defendants.

## COUNT III

## VIOLATIONS OF THE FIRST AMENDMENT

132.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

133.    The litigation that I regularly engage in is a form of political expression that is protected by the First Amendment. Trump is violating my freedom of expression.

134.    Trump's threats of severe penalties deter free speech, association and petitioning activities almost as potently as the actual application of those penalties.

135.    The First Amendment prohibits retaliatory actions, including prosecution, threatened prosecution, bad faith investigation, and legal harassment that would chill a person of ordinary firmness. Trump's orders and schemes attacking lawyers are chilling my speech and petitioning, and they would chill a person of ordinary firmness. The First Amendment prohibits the

regulation or censoring of speech based on the specific motivating ideology or the opinion or perspective of the speaker. Such government action is a blatant and egregious form of content discrimination and is subject to strict scrutiny.

136.    Trump's orders, schemes, crusade, and course of action abridge my freedom of speech, freedom of association and violate my right to petition the government for redress of grievances under the First Amendment to the Constitution of the United States.

137.    I have suffered and I am suffering ongoing losses, harms and injuries as a result of these abridgments and violations of protections of the First Amendment.

## COUNT VI

## VIOLATIONS OF THE EIGHTH AMENDENT

138.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

139.    Trump's orders and schemes create a substantial and imminent threat that he will impose excessive fines and penalties on me.

140.    Trump's orders, schemes, crusade, and course of action violate the Eighth Amendment's prohibition on excessive fines.

141.    I have suffered and I am suffering ongoing losses, harms and injuries as a result of the defendants' violations of the Eighth Amendment.

## COUNT VI

## UNLAWFUL BILLS OF ATTAINDER AND *EX POST FACTO* LAWS

142.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

143.     The penalties imposed on lawyers and law firms in Trump's orders against them violate the prohibition on *ex post facto* laws and bills of attainder.

144.     Trump's orders, schemes, and course of action violate Article I, Section 9, Clause 3 that provides that "No Bill of Attainder or *ex post facto* Law shall be passed."

145.     I have suffered and I am suffering ongoing losses, harms and injuries as a result of the defendants' violations of Article I, Section 9, Clause 3.

### E. <u>REQUEST FOR RELIEF</u>

WHEREFORE, I respectfully request judgment as follows:

(a)     Declaring which of the Plaintiff's rights have been and are being violated by the President's orders, actions and scheme to punish lawyers and law firms.

(b)     Declaring to what extent the President's orders, actions and schemes to punish lawyers and law firms exceed his authority under the Constitution of the United States.

(c)     Declaring that the President's orders, actions, and schemes to extort support from the plaintiff, lawyers and law firms exceed his authority under the Constitution of the United States.

(d)     Declaring to what extent the agreements to contribute money to groups and causes supported by the President that the President extorted from law firms are unconstitutional, void and unenforceable.

(e)     Declaring that the President's orders, actions and scheme to punish lawyers and law firms have in this case violated the rights of the Plaintiff under the First Amendment, and the Due Process Clause of the Fifth Amendment.

31

(f)    Declaring the extent to which the President's orders against specific law firms and individuals violate the prohibition on bills of attainder and *ex post facto* laws in Article I, Section 9, Clause 3 of the Constitution of the United States.

(g)    Declaring the extent to which orders that exclude lawyers from federal buildings and property, because of litigation that the lawyers have engaged in, violate the Constitution of the United States.

(h)    Declaring the extent to which orders that prohibit federal officials and employees from communicating with lawyers, because of litigation that the lawyers have engaged in, violate the Constitution of the United States.

(i)    Preliminarily, then permanently, enjoining Bondi and Noem from enforcing and implementing, or assisting in enforcing and implementing, orders and executive actions that are found by the Court to violate the rights of lawyers, law firms and the plaintiff.

(j)    I have named Noem as a defendant because the March 22 Orders are directed to her as the Secretary of Homeland Security ("DHS"). I regularly travel domestically and internationally. In my travels, I interact with the Transportation Security Administration (TSA), Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection (CBP) and Global Entry, agencies that are operated by DHS. Because I could be subjected to sanctions and punishment through DHS, I request that Noem be preliminarily, then permanently, enjoined from enforcing and implementing the orders, and the unlawful schemes to punish lawyers, against me.

(k)    I have named Bondi as a defendant because the March 22 Orders are directed to her as the Attorney General. It assigns her a key role in implementing the orders and the schemes. Because of this, I request that Bondi be preliminarily, then permanently, enjoined from enforcing and implementing the orders, and the unlawful schemes to punish lawyers, against me.

(l)    Grant such other declaratory, equitable and injunctive relief as is just, appropriate

and necessary to provide as complete a remedy as possible to the plaintiff.

Respectfully submitted,
J. Whitfield Larrabee,

*J. Whitfield Larrabee*

_____
J. Whitfield Larrabee
14 Searle Avenue
Brookline, MA 02445
jw.larrabee@verizon.net
(857) 991-9894
BBO # 553499