UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

_____
                                    )

**J. WHITFIELD LARRABEE**,        )
                                    )
               *Plaintiff,*        )
                                    )
v.                                   )
                                    )
**DONALD J. TRUMP,**       )
President of the United States of America,     )
in his official capacity,        )   Civil Action No.:
**PAMELA JO BONDI**, Attorney   )   **1:25-CV-10947-NMG**
General of the United States of America, in )
her official capacity, and **KRISTI NOEM**,  )
Secretary of the Department of Homeland   )
Security of the United States of America,   )
in her official capacity, **MARCO RUBIO,**  **)**
Secretary of the State Department of the   )
United States of America, in his official   )
capacity, **EXECUTIVE OFFICE OF THE )**
**PRESIDENT,** and, **UNITED STATES OF** )
**AMERICA,**                  )
                                    )
               *Defendants*.     )
_____)

## FIRST AMENDED COMPLAINT

### I. INTRODUCTION AND SUMMARY

1.      I, J. Whitfield Larrabee, am a lawyer.

2.      In this action I am challenging President Trump's unconstitutional policy and executive actions punishing and threatening to punish lawyers and law firms who represent clients who he does not like, or who are his political or legal adversaries, or who engage in speech and petitioning critical of him.

1

3.      I am bringing this action to vindicate my right to practice law, to participate freely in judicial and quasi-judicial proceedings, to petition the government for redress of grievances and to engage in freedom of speech and association.

4.      President Trump ("Trump") is abusing the power of his office and engaging in a pattern and policy of unconstitutional executive action by punishing and retaliating against lawyers and law firms based on their lawful petitioning, expression and associations. The government violates the First Amendment when it uses threats, intimidation or coercion to punish or suppress disfavored expression and lawful associations. Trump is deploying the power of the federal government against many lawyers and law firms to punish, intimidate and coerce them because they have filed lawsuits he doesn't like, participated in prosecuting him for crimes he committed and represented clients who were his adversaries. He is also using unconstitutional threats, intimidation and coercion to extort the contribution of services from lawyers and law firms to causes he supports. Trump is acting *ultra vires* - with no legal authority - for his orders or his course of executive actions against lawyers and law firms; neither the Constitution, nor any statute, authorizes Trump to issue these orders or take these actions. I am requesting the court to protect me from present, ongoing and threatened harm by declaring that Trump's orders and actions are unconstitutional and enjoining their implementation.

5.      Due to my past and present activities, as a lawyer and private citizen, there is a substantial, imminent and objective threat that I will be subjected to unauthorized sanctions, discipline and punishments that Trump and his agents are imposing on lawyers and law firms.

6.      Between 2016 and 2020, I launched a fusillade of more than 25 legal complaints, with state and federal agencies, against Trump and individuals or entities connected to him.

These complaints exposed violations of law by Trump, his associates, administration, campaign, businesses and foundations. I continue to file legal complaints against Trump, his administration, his associates and his allies. I remain a political and legal adversary of Trump.

7.     Trump's own statements and orders demonstrate that I face a substantial, imminent, and certainly impending threat of harm because of the categories of cases that I handle and the categories of clients that I represent. Trump has promised, on Fox New and in a social media post, to go after lawyers like me. In his written orders and directives he has threatened lawyers like me who represent immigrants, litigate against the federal government, have been his adversaries and who have lawful diversity, equity and inclusion ("DEI") programs. Trump's crusade against lawyers like me puts me in his crosshairs. He is likely to pull the trigger at any time.

8.     I have Article III standing to challenge Trump's unconstitutional course of action because I have suffered and am suffering actual and threatened injuries due to his executive actions and these injuries are likely to be redressed by the relief that I am requesting. I have altered my behavior and declined to handle cases and to represent clients due to Trump's credible threats to punish me because of my activities that are protected by the First Amendment. Trump's credible threats of punishment have actually injured me by unconstitutionally regulating my activities as a lawyer, impairing my independent professional judgment, creating conflicts of interest and interfering with my attorney/client relationships. Furthermore, I have standing because I intend to engage in petitioning, speech and associations that are protected by the First and Fifth Amendments, and there is a credible threat that I will be accused, prosecuted and punished by the defendants for engaging in that course of conduct.

9.    My sworn declaration, attached as Exhibit "1," setting forth detailed allegations supporting this complaint, is incorporated herein by reference.

## II. PARTIES

10.    I, J. Whitfield Larrabee, am the plaintiff in this matter. I am an attorney admitted to practice law in the courts of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, the United States Court of Appeals for the First Circuit and the Supreme Court of the United States. I have represented clients in each of these Courts. I have also represented clients before the Federal Election Commission, Equal Employment Opportunity Commission and other federal agencies.

11.    The primary location of my law practice is in Brookline, Massachusetts where I am a resident.

12.    Defendant, Donald J. Trump ("Trump") is the current President of the United States of America. He is sued in his official capacity.

13.    Defendant, Pamela Jo Bondi, (hereinafter "Bondi") is the current Attorney General of the United States of America. She is sued in her official capacity. Bondi is responsible for implementing and enforcing Trump's unconstitutional orders and policies as herein described. Bondi is aiding and abetting Trump in his unconstitutional course of action.

14.    Defendant, Kristi Noem, (hereinafter "Noem") is the current Secretary of Homeland Security of the United States of America. She is sued in her official capacity. Noem is responsible for implementing and enforcing Trump's unconstitutional orders and policies as herein described. Noem is aiding and abetting Trump in his unconstitutional course of action.

15. Defendant Marco Rubio, (hereinafter "Rubio") is is the current Secretary of State of the United States of America. He is sued in his official capacity. Rubio is responsible for implementing and enforcing Trump's unconstitutional orders and policies as herein described.

16. Defendant Executive Office of the President ("EOP") is headquartered in Washington, D.C. It is an agency within the meaning of 5 U.S.C. § 702. The EOP functions as the central coordinating entity through which Trump executes the unconstitutional course of action against lawyers and law firms described in this complaint.

17. Defendant United States of America is responsible for the exercise of state action by the other named Defendants. The United States of America is included as a Defendant to ensure the relief ordered by the Court will apply government-wide.

### III. JURISDICTION

18. This court has jurisdiction under 28 U.S.C., §§ 1331, 1343 and 1346 as the President and other United States officials are defendants and the matter arises under the Constitution and laws of the United States.

19. The Court has authority to enter a declaratory judgment and to provide temporary, preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the All Writs Act, 28 U.S.C. § 1651 and the Court's inherent equitable powers.

20. This court is the proper venue for this action, under 28 U.S.C. § 1391(e) (1), due to my residency in this judicial district.

## IV.  COMPLAINT

## A. BACKGROUND

21.    Since Trump took office on January 20, 2025, he has engaged in a course of unconstitutional executive actions that punish and threaten to punish lawyers and law firms. Trump and his agents in the government are issuing manifestly unconstitutional executive orders that impose punishments on lawyers and law firms across the nation in a way that violates our First Amendment rights.

22.    In retaliation for their lawful professional activities, Trump has issued orders: (1) limiting the access of some law firms' employees to federal buildings in retaliation for their lawful professional activities, (2) limiting federal officials from engaging with employees of some law firms, (3) threatening to cancel the government contracts of entities if they continue to do business with particular lawyers and law firms, (4) suspending the security clearances of lawyers and employees of particular law firms, (5) instigating groundless investigations of law firms by the Equal Employment Opportunity Commission ("EEOC")  and, (6) engaging in other acts against lawyers involving unconstitutional threats, intimidation and coercion.

23.    Through his agents in the Attorney General's office, the Department of Homeland Security, the Department of State, the Executive Office of the President and other departments and agencies of the United States, Trump is carrying out a campaign of retribution and retaliation against lawyers and law firms who: (1) conducted lawful investigations of Trump, his prior administration, campaigns, businesses and foundations, (2) participated in prosecutions and litigation against Trump, his prior administration, campaigns, businesses and foundations or, (3) represented clients Trump dislikes, or, (4) advocated for causes that Trump disfavors.

24.     Through his agents in the government Trump has retaliated against lawyers and law firms who represented his political opponents in election-related litigation or who were connected to the investigations and prosecutions conducted by the office of Special Counsel Robert Mueller, III.

25.     Trump has engaged in a clear pattern of issuing orders purposefully punishing lawyers who have opposed him or who are associated with lawyers and clients who have been his adversaries.

26.     Trump is actively persecuting lawyers and others who he views as his political or legal enemies.

27.     Trump's unconstitutional persecution of certain lawyers, law firms, universities, reporters, news organizations and immigrants has created a widespread atmosphere of fear within the legal community and in society at large.

28.     Trump is violating the separation of powers specified in the Constitution by acting as a lawmaker and a judge to define offenses, adjudicate guilt and selectively impose punishments on particular lawyers and law firms.

29.     Trump is violating the due process clause of the Fifth Amendment to the Constitution by imposing punishments on certain lawyers and law firms without giving them any prior notice or any opportunity to be heard.

30.     As detailed in this complaint, I have actively participated in, am currently engaging in, and intend to pursue lawful petitioning activities, free speech and associations that run afoul of Trump's unconstitutional orders, policies and punitive course of conduct.

31.     As a member of the group of lawyers that Trump has announced he will punish, I am being injured and face a substantial and certainly impending threat of future injury.

32.     As part of his course of conduct, Trump has issued orders collectively punishing thousands of individual lawyers and law firm employees.

33.     Trump's orders, policies and course of conduct infringe upon my First Amendment rights and the rights of other lawyers and law firms by imposing and threatening to impose retaliatory penalties on me and other lawyers based on the content of our speech, lawful associations and petitioning activities.

34.     Trump's threats and ongoing persecution of lawyers and law firms have discouraged and prevented me and many others in the legal profession from representing certain clients and advocating for specific causes. Trump is diminishing my liberty, the liberty of other lawyers and the liberty of the American people with his menacing orders, actions and schemes.

35.     I have no adequate remedy at law for the constitutional violations alleged herein. I will suffer irreparable harm in the absence of declaratory and injunctive relief, including the chilling of First Amendment expression, injury to my reputation, and impairment of my ability to travel and practice law freely without fear of governmental retaliation.

36.     As a direct result of ongoing losses, harms and injuries to me caused by Trump's unconstitutional threats, orders and actions, declaratory and injunctive relief is necessary to: (1) clarify the rights and obligations of the parties involved, (2) deter Trump and the other defendants from engaging in unlawful actions against me and other lawyers and, (3) permanently restrain the other defendants from implementing Trump's unconstitutional orders, actions and policies.

**B. TRUMP'S PUBLIC THREATS AGAINST LAWYERS AND ADVERSARIES**

37.    On June 5, 2024, during an interview on Fox News, Trump said of his political opponents, "Look, when this election is over, based on what they've done, I would have every right to go after them…."

38.    On September 7, 2024, Trump posted to Truth Social, "WHEN I WIN, those people that CHEATED will be prosecuted to the fullest extent of the Law…. Please beware that this legal exposure extends to Lawyers…."

39.    On October 22, 2024, National Public Radio identified over "100 threats to investigate, prosecute, imprison or otherwise punish his perceived opponents" in Trump's rallies, speeches, interviews, and social media posts.

**C. TRUMP'S UNCONSTITUTIONAL MARCH 22 MEMORANDUM**

40.    On March 22, 2025, Trump issued a "Presidential Memorandum" and set of orders titled, "Preventing Abuses of the Legal System and the Federal Court." ("hereinafter referred to as "the March 22 Memorandum"). This document is attached hereto as Exhibit "2."

41.    The March 22 Memorandum is part of Trump's unconstitutional course of action punishing attorney's and law firms for engaging in activities protected by the First Amendment.

42.    The March 22 Memorandum provides an outline of some of the unconstitutional policies, practices and procedures challenged in this complaint.

43.    The March 22 Memorandum states that it is "for the Attorney General and the Secretary of Homeland Security." The March 22 Memorandum, in part, provides:

> Unfortunately, far too many attorneys and law firms have long ignored these requirements when litigating against the Federal Government or in pursuing baseless partisan attacks. To address these concerns, I hereby direct the Attorney

General to seek sanctions against attorneys and law firms who engage in frivolous, unreasonable, and vexatious litigation against the United States or in matters before executive departments and agencies of the United States. I further direct the Attorney General and the Secretary of Homeland Security to prioritize enforcement of their respective regulations governing attorney conduct and discipline. See, e.g., 8 C.F.R. 292.1 et seq.; 8 C.F.R. 1003.101 et seq.; 8 C.F.R. 1292.19. [emphasis supplied]

44.     Trump's order to the Attorney General to review conduct by attorneys in litigation against the federal government over the last 8 years contributes to creating a substantial, imminent and certainly impending threat of injury to me.

45.     The March 22 Memorandum also specifically refers to the "immigration system" and threatens lawyers who handle immigration cases.

46.     Although some of Trump's orders against specific law firms and lawyers occurred before he published the March 22 Memorandum, the March 22 Memorandum points to some of the general outlines of the policy and scheme that Trump and the executive branch are using to persecute and punish lawyers. Pursuant to the policy, the Attorney General's makes recommendations to Trump. Then Trump, acting as a judge and jury, finds facts and sentences lawyers and law firms to punishments. The penalties contained in Trump's orders, which amount to judgments, are put into effect by Trump's agents in departments and agencies throughout the United States government.

47.     Trump has created a parallel judicial system in the executive branch. In that system, Trump and his agents fabricate new crimes and offenses based on alleged, often imagined, misconduct. He conducts his own prosecutions and trials of lawyers and law firms. The accused in these cases are convicted, in *absentia*. After Trump adjudicates these matters, he punishes the lawyers and law firms without any of the constitutionally guaranteed procedural

safeguards normally protected by the judiciary in civil and criminal cases. Trump's orders, and the unconstitutional schemes, pose a substantial and imminent threat to me, as well as to other members of the class of lawyers who are currently targeted by his actions.

48.    The March 22 Memorandum is unconstitutional on its face and as applied. It purports to authorize sweeping punitive actions against attorneys and law firms without judicial oversight, without statutory authority, and without procedural safeguards, in direct violation of multiple provisions of the Constitution of the United States.

49.    First, the Memorandum and related policy violates the First Amendment by discriminating against attorneys based on the content and viewpoint of their advocacy. It specifically target attorneys who have litigated against the federal government, supported immigration cases, or advanced diversity, equity, and inclusion initiatives. These directives threaten to impose retaliatory penalties on lawyers and law firms for engaging in protected political expression, association, and petitioning activity. The Memorandum threatens to punish advocacy based on its ideological character and seeks to deter lawyers from associating with disfavored clients or causes.

50.    Second, the Memorandum and related policy functions as a form of prior restraint by chilling future legal advocacy. It creates an environment in which lawyers must weigh the risk of government retaliation before deciding whether to represent clients in politically sensitive cases or file petitions against government officials. This chilling effect on core First Amendment activity undermines the independence of the legal profession and the integrity of the justice system.

11

51.     Third, the March 22 Memorandum and related policy violates the separation of powers doctrine and constitute an *ultra vires* exercise of power by the President. The Memorandum assigns to the President and his agents the roles of investigator, adjudicator, and executioner of legal penalties - functions that belong to the judicial branch under Article III. By directing the Attorney General and other executive officials to identify lawyers for punishment, and by authorizing the President to impose those punishments directly, the Memorandum unlawfully usurps judicial power.

52.     Fourth, the Memorandum and related policy are unconstitutionally vague and overbroad. The Memorandum and policy fail to provide any clear standards to define what constitutes "frivolous," "unreasonable," "vexatious," or "partisan" litigation. These vague terms invite arbitrary enforcement and do not provide attorneys with adequate notice of what conduct is prohibited or punishable. The Memorandum references attorney conduct over the past eight years, further compounding its vagueness and introducing retroactive enforcement criteria, contrary to the Fifth Amendment's Due Process Clause.

Fifth, the Memorandum, policy and related executive actions operate as unconstitutional bills of attainder and ex post facto laws. They impose punitive measures - such as banning lawyers from federal buildings, canceling government contracts, punishment of clients and revoking security clearances - based on prior lawful conduct and without trial or due process. These measures single out particular lawyers and firms for punishment based on past associations and viewpoints, in direct violation of Article I, Section 9, Clause 3 of the Constitution.

53.     As a member of the class of lawyers targeted by this March 22 Memorandum and other executive orders, I am presently being injured and I am at substantial and ongoing risk of irreparable harm. I request the most broad injunctive relief available under the law to prevent the enforcement of punitive orders provided for in the Memorandum, against me and other lawyers, and declaratory relief establishing that the orders are null and void.

### D. TRUMP'S RETALIATION AGAINST SPECIFIC LAWYERS AND FIRMS

54.     On February 5, 2025, Trump issued a "Presidential Memorandum" with orders suspending security clearances and imposing other punishments on the law firm of Covington & Burling LLP ("Covington") and attorney Peter Koski. Memorandum on Suspension of Security Clearances and Evaluation of Government Contracts, DCPD-202500303 (Feb. 25, 2025), available at GovInfo or White House, attached hereto as Exhibit "3." In 2019, Joe Biden selected Covington to be counsel for his presidential campaign against Trump. Kolski, while employed by Covington, provided at least $140,000 in *pro bono* services to Jack Smith, who was appointed by the U.S. Attorney General as a Special Counsel. Smith's office prosecuted Trump for crimes related to stolen government documents and the January 6 insurrection. Trump imposed punishments on Kolski and Covington in retaliation for their assistance to the Special Counsel's investigation and prosecution and for other activities protected by the First Amendment.

55.     On March 6, 2025, Trump signed Executive Order 14230 ("EO 14230"), 90 Fed. Reg. 11781 (Mar. 11, 2025), entitled "Addressing Risks from Perkins Coie LLP," attached hereto as Exhibit "4." The order imposed punishments on the Perkins Coie law firm. In 2016, Marc Elias and other former members of a practice group within Perkins Coie, called the Political Law group, represented Hillary Clinton in connection with her presidential campaign against Trump.

Trump imposed punishments on Perkins Coie in retaliation for the firm's lawful representation of Clinton, it's involvement in election related lawsuits and for their other activities protected by the First Amendment.  On May 2, 2025, U.S. District Judge Beryl A. Howard ruled that EO 14230 violates the First, Fifth and Sixth Amendments and is "null and void." Judge Howard permanently enjoined enforcement of that order.

56.     On March 14, 2025, Trump signed Executive Order 14237 ("EO 14237"), 90 Fed. Reg. 13039 (Mar. 20, 2025), entitled "Addressing Risks from Paul Weiss," attached hereto as Exhibit "5." The order imposed punishments on the Paul Weiss law firm and attorney Mark Pomerantz. EO 14237 cites Paul Weiss's employment of Mark Pomerantz, a lawyer who had previously investigated Trump's business dealings while working as a special prosecutor for the Manhattan District Attorney's office. After Pomerantz resigned, the District Attorney's office brought charges against Trump that resulted in multiple felony convictions. Trump imposed punishments on Paul Weiss and Pomerantz in retaliation for (1) Pomerantz's activities investigating Trump with the District Attorney's Office, (2) a lawsuit filed by a Paul Weiss partner and former leading prosecutor in the office of Special Counsel Robert Mueller against individuals who participated in the events that occurred on January 6, 2021 and, (3) for their other First Amendment activities. Paul Weiss later reached an agreement with the Trump administration. Under duress, the firm agreed to audit its hiring practices and provide $40 million in *pro bono* legal services for causes supported by the administration. As a result of the firm's capitulation, Trump rescinded the executive order against Paul Weiss. Paul Weiss bought relief from presidential punishment by publicly kowtowing to Trump's narrative and financially subsidizing Trump's preferred initiatives. Paul Weiss's capitulation was not a voluntary business

14

decision; it was the result of extortionate pressure applied by the President of the United States.

57.    On March 25, 2025, Trump signed Executive Order 14246, 90 FR 13997 (March 28, 2025), entitled, Addressing Risks From Jenner & Block, attached hereto as Exhibit "6." The order imposed punishments on the Jenner & Block law firm and attorney Andrew Weissmann. Weissmann is a former federal prosecutor who played a key role in the Mueller investigation. Trump imposed punishments on Weissmann and his firm in retaliation for Weissmann's work on the Mueller investigation and for their other activities protected by the First Amendment. On May 23, 2025, U.S. District Judge John D. Bates declared EO 14246 null and void and enjoined its operation.

58.    On March 25, 2025, Trump signed Executive Order 14250 ("EO 14250"), 90 Fed. Reg. 14549 (April 3, 2025), entitled "Addressing Risks From WilmerHale," attached hereto as Exhibit "7." The order imposed punishments on the WilmerHale law firm.  Robert Mueller was a partner at WilmerHale before he was assigned to be Special Counsel. He returned to WilmerHale after he concluded his investigation. James Quarles, formerly a partner at WilmerHale, was an assistant special counsel for the Mueller investigation. Aaron Zebley, a partner at WilmerHale, was the deputy special counsel of the Special Counsel investigation headed by Robert Mueller. Trump imposed punishments on WilmerHale, Mueller, Quarles and Zebley in retaliation for their work on the Mueller investigation and for their other activities protected by the First Amendment. On May 27, 2025, U.S. District Judge Richard Leon found that EO 14250 was unconstitutional and granted declaratory and injunctive relief to WilmerHale.

59.    On April 9, 2025, Trump signed Executive Order 14263 ("EO 14263"), 90 Fed. Reg. 15615 (April 15, 2025), entitled "Addressing Risks From Susman Godfrey," attached hereto

as Exhibit "8." The order imposed punishments on the Susman Godfrey law firm due to the firm's ideology, associations, lawful petitioning and other activities protected by the First Amendment. Susman Godfrey represented Dominion Voting Systems in its defamation lawsuit against Fox News. The lawsuit accused the network of spreading false claims about Dominion's voting machines in the 2020 U.S. presidential election. Fox News, a network that tends to be allied with Trump and the Republican Party, agreed to payment of $787.5 million in settlement of the case. Additionally, Susman Godfrey has pursued similar defamation cases against other Trump allied organizations and individuals.

60.    On March 22, 2025, Trump rescinded security clearances and access to classified information for the following attorneys: Antony Blinken, Jacob Sullivan, Lisa Monaco, Mark Zaid, Norman Eisen, Letitia James, Alvin Bragg, Andrew Weissmann, Hillary Clinton, Elizabeth Cheney, Kamala Harris, and Joseph R. Biden Jr.. Letitia James, as the NY Attorney General, prosecuted civil cases against businesses and foundations operated by Trump and his family. Alvin Bragg, as the Manhattan District Attorney, criminally prosecuted Trump. Trump was convicted of dozens of felonies in that prosecution. The punishments imposed on these lawyers on March 22, 2025 were retribution and retaliation against the lawyers because they engaged in political and legal activities protected by the First Amendment that are disfavored by Trump.

61.    Due to the imposition of sanctions and punishments on lawyers and law firms specified in Trump's recent orders, the targeted lawyers and firms have suffered injuries that include millions of dollars in financial losses, the loss of clients, damage to their reputations, being prevented from meeting with federal lawyers and officials and being obstructed in their ability to represent their clients. Trump's orders have threatened to bankrupt some law firms.

16

### E. TRUMP'S INTIMIDATION, COERCION AND EXTORTION OF LAWYERS

62.     While some lawyers and law firms have chosen to challenge Trump's punitive orders in court, other lawyers and law firms have chosen a path of capitulation. Rather than face the potentially ruinous sanctions threatened by Trump, at least nine major law firms entered into back-room "agreements" with the Trump White House to avoid being named in similar executive orders. The Administration has euphemistically characterized these deals as voluntary "settlements." In reality, they were coerced surrenders extracted under Trump's threats of executive punishment and retaliation.

63.     Under threats of unconstitutional punishment, some of the largest law firms in the United States have agreed to provide free legal services to causes supported by Trump because they were threatened with punitive executive action. For example, four firms - Kirkland & Ellis, Latham & Watkins, A&O Shearman and Simpson Thacher & Bartlett - each agreed to provide $125 million in *pro bono* or free legal work. Three firms - Skadden, Arps, Slate, Meagher & Flom LLP, Milbank LLP, and Cadwalader, Wickersham & Taft - each agreed to provide at least $100 million in *pro bono* or free work. Counting the pledge from Paul Weiss, Trump has extorted promises of at least $940 million in *pro bono* or free legal work from these law firms.

64.     At a White House event on April 8, 2025, Trump said, "Have you noticed that lots of law firms have been signing up with Trump? $100 million, another $100 million for, uh, damages that they've done. They give you $100 million and then they announce that, 'But we have done nothing wrong.' And I agree, they've done nothing wrong. But what the hell, they give me a lot of money considering they've done nothing wrong."

65.     Trump's deliberate scheme to extort money from lawyers and law firms is threat against me and other lawyers.  It is a threat that we will be punished unless we pay up.  It is most threatening to those of us who are unwilling or unable to pay up. It is an egregious violation of his oath to faithfully execute the laws of the United States. His extortion scheme and threat of extortion is causing injuries to me, other lawyers and to the legal system. Trump's extortion is depriving me and other constituents of his honest services. It is undermining the rule of law and degrading the reputation of the legal profession.  It is a betrayal of the public trust.

### F. TRUMP'S DEI CENSORSHIP AND DISCRIMINATION

66.     A March 8, 2025 fact sheet issued by the White House quoted the President stating, "We will terminate every diversity, equity, and inclusion program across the entire federal government." Trump's recent orders and actions terminating diversity, equity, and inclusion programs, policies and language extend to private lawyers and law firms. In EO 14230, EO 1427 and EO 14263, orders that imposed punishments on several law firms for fabricated allegations of discrimination, Trump declared that "My Administration is committed to ending discrimination under 'diversity, equity, and inclusion' policies..." Trump has issued executive orders and made public statements condemning DEI initiatives as "discriminatory" and "anti-American." Trump's arbitrary, capricious and indiscriminate actions curtailing expression favoring diversity, equity and inclusion is unconstitutional censorship.

67.     Trump threats against DEI are not abstract; they are backed by executive orders, enforced by federal agencies, and reinforced by public denunciations and retaliatory enforcement actions. He has directed federal agencies to penalize lawyers and firms that maintain such policies. These directives include threats to terminate federal contracts, revoke security

clearances, and prohibit access to federal buildings and officials—all forms of state-imposed punishment tied to the content of a firm's internal policies and publicly expressed values.

68.     Trump's campaign against DEI amounts to a deliberate effort to silence dissenting viewpoints within the legal profession and to reshape legal advocacy in service of his political ideology. In doing so, he has violated the First Amendment's core protections and caused substantial and ongoing injury to me and similarly situated lawyers.

69.     Trump is violating the First and Fifth Amendments by using executive orders to threaten, punish, investigate, and censor private lawyers and private law firms, based on the pretext that the lawyers and firms are engaged in illegal discrimination by expressing support for the laudable concepts of diversity, equity and inclusion in their policies, programs and other speech. Neither the constitution, nor any statute, authorizes the President to take these actions.The meaning of diversity, equity and inclusion, as used by Trump, is elastic – its parameters are ill defined.  Congress has enacted legislation, including the Civil Rights Act of 1964, 42 U.S.C. § 2000a et. seq., and the Equal Rights Act, 42 U.S.C. § 1981, that promote DEI in many areas of life, including employment and contracting. Employers in Massachusetts are required and encouraged by state and federal law to take a variety of steps to promote DEI including: (1) by posting state and federal anti-discrimination notices, (2) maintaining anti-discrimination policies, and (3) conducting training of managers and employees aimed at preventing sexual harassment and discrimination. The March 22 Memorandum and Trump's other executive orders, which threaten and impose punishments on private lawyers and private law firms, promote discrimination and conflict with anti-discrimination statutes and the regulations promulgated under those statutes.  Those orders do not provide an actionable

definition of what constitutes DEI or a DEI practice, or delineate between lawful DEI practices and unlawful ones.

70.     The orders threaten me and other lawyers with punishment while we are unsure of what activities are prohibited due to a lack of clarity. Trump's course of action and orders banning DEI are unconstitutionally confusing and vague, in violation of the due process clause of the Fifth Amendment. They violate statutory and constitutional rights to equal protection of the laws by promoting race discrimination, sex discrimination and other forms of discrimination.

71.     I have long had a diversity, equity and inclusion policy and program that includes: (1) hiring a diverse set of qualified employees and contractors from different backgrounds; (2) reaching out to and representing people who have historically been marginalized and discriminated against because of their race, national origin, gender, sexuality, immigration status and disabilities; (3) working to eradicate discrimination against marginalized people by initiating lawsuits and making complaints to state and federal agencies; (4) taking other lawful actions to remove barriers that have historically led to unequal outcomes and, (5) creating an environment where people from all backgrounds feel welcome. This policy and program is part of the personal and professional mission that I have pursued for more than 36 years an active lawyer.

72.     My diversity, equity and inclusion policy and program is a mode of expression and association protected by the First Amendment that the Trump administration cannot lawfully prohibit under the guise of "Preventing Abuses of the Legal System and the Federal Court."

73.     Trump's campaign against DEI policies is retaliatory in practice. It targets me and other lawyers and firms for past associations with progressive causes, civil rights clients, and expressions of solidarity with marginalized groups. The threat of government reprisal for

maintaining or promoting DEI principles chills my lawful expression, deters my participation in public debate, and undermines the legal profession's commitment to equal justice under law.

74. These government actions impose an unconstitutional condition: compelling me and other lawyers to choose between expressing our DEI values and avoiding state-sanctioned penalties. The First Amendment forbids the government from penalizing expression merely because it disagrees with the message conveyed. Trump's actions not only punish protected speech and association but also seek to delegitimize and suppress the foundational values of diversity, equity, and inclusion in the legal system.

75. This coercive regime has already caused law firms to alter their DEI programs, cancel outreach initiatives, and disavow public commitments to diversity—demonstrating the chilling effect of Trump's campaign. Lawyers like me, who maintain DEI policies and advocate for immigrants and other traditionally excluded groups, now face credible threats of punishment for exercising our constitutional rights.

76. Trump's orders and statements prohibiting DEI policies, and threatening sanctions against lawyers who have such policies, abridge my freedom of speech, my freedom association and my right to petition the government for redress of grievances. My DEI policy and program is one of the means by which I communicate my values to potential clients, employees and contractors. The threat of being punished because of my DEI policy and program is causing damage to my reputation, a loss of goodwill in the community and a loss of valuable clients. The threat of sanctions and penalties for having a DEI policy and program and using the words diversity, equity and inclusion has a chilling effect on my speech and petitioning activities. By prohibiting DEI policies at law firms, Trump is censoring my speech. Although I have a DEI

policy, Trump's threats of prosecution and orders have caused me to capitulate to his demands and decline to represent particular clients. Trump has injured me by forcing me to abandon my DEI program and policy in those cases.

77.    Trump's orders and schemes injure me by credibly threatening me with penalties for having DEI policies, representing certain clients, and advocating for particular causes. They arbitrarily interfere with my right to pursue lawful employment and engage in my chosen occupation. They deprive me of the right to work and support myself as a lawyer.

78.    By explicitly conditioning access to government resources and legal forums on the abandonment of DEI commitments, Trump is threatening, intimidating and coercing me and other lawyers to conform our speech and associations to his ideological preferences. This constitutes viewpoint discrimination, which is presumptively unconstitutional under established First Amendment doctrine.

## G. MY ARTICLE III STANDING

79.    I have Article III standing because I am personally suffering ongoing injuries and will imminently suffer other: (1) concrete and particularized injuries, (2) traceable to the unlawful actions of the defendants, (3) that are redressable by a favorable judicial decision.

80.    The sanctions and discipline threatened in Trump's orders are actually injuring me by interfering with my independent professional judgment, loyalty and zealous representation that I owe to my clients under the Massachusetts Rules of Professional Responsibility. These rules govern my conduct as an attorney who is licensed in Massachusetts. Trump's unconstitutional demand for my loyalty to him and the federal government conflicts with my obligations to my clients. Trump's executive actions and orders injure me by subjecting me to

22

unlawful regulation of my professional conduct, curtailing my activities as a lawyer and creating

uncertainty regarding the ethical rules that I am bound to obey. This has disrupted my law

practice and forced me to take precautions to avoid harm to myself and my clients. By impairing

my independent judgment as a lawyer, Trump has caused me to suffer from ongoing mental

injuries. Trump is injuring me by violating the government's constitutional obligation to respect

the professional independence of attorneys. See, Polk County v. Dodson, 454 U.S. 312, 331-332

(1981). This not only causes actual injury sufficient for standing, but also constitutes a systemic

attack on the independence of the legal profession.

81.    Trump's March 22 Memorandum, his other orders against lawyers and law firms,

and his coordinated campaign attacking lawyers are injuring me by improperly: (1) inserting

Trump's political interests into the heart of my attorney-client relationships; (2) forcing me to

consider my own safety, professional survival, and economic security before deciding whether to

take a case or advocate fully, (3) creating conflicts that prevent and substantially limit my ability

- as solo practitioner, civil rights lawyer and immigration advocate - to comply with my ethical

duties.

82.    I have Article III standing because I intend to engage in petitioning, speech and

associations that are protected by the First and Fifth Amendments, including filing legal

complaints against officials in the Trump administration, and there is a credible threat that I will

be arbitrarily accused of misconduct, punished and prosecuted by the defendants for engaging in

that course of conduct. See, Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir.2003); Babbitt

v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979).

83.    I have Article III standing because there is a credible threat that I will be accused, punished and prosecuted by Trump for engaging in a course of conduct protected by the First and Fifth Amendments, I have been chilled from exercising my rights to engage in free expression, petitioning and associations, and I have forgone engaging in such activities in order to avoid being punished and suffering other enforcement consequences. See, Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir.2003); Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591-592 (6th Cir. 2009).

84.    My well-documented history of engaging in activity protected by the First Amendment that is disfavored by the President establishes a credible threat of future enforcement and retaliation under current circumstances. This credible, substantial and certainly impending threat of injury satisfies the Article III requirements for standing to seek prospective relief.

85.    Trump has engaged in a pattern of punitive executive orders, actions and threats against lawyers and law firms who: (1) were linked to the Mueller investigation, (2) advocated for him to be prosecuted in the criminal justice system, (3)  engaged in litigation against the federal government or officials in the Trump administration, (4) engaged in litigation against Trump, his businesses, political campaign, foundations or family members, (5) politically opposed him or supported his political opponents, (6) engaged in partisan "lawfare" - as defined by Trump (Trump's accused Jenner & Block of engaging in what he described as "partisan lawfare" in his order against the firm.), (7) represent immigrants, or, (8) have DEI policies. Trump has stated on many occasions that he intends to take actions against lawyers who engage in these activities. I have engaged in activities that fit into each of the eight categories listed in

this paragraph. The President's statements that he will impose punishments on lawyers for engaging in particular disfavored activities establish a credible, substantial and certainly impending threat to lawyers like me who have been and are engaged in those activities.

86.    I face a substantial, credible and imminent threat that Trump will issue orders that punish and injure me because I have antagonized him and his agents in the government with a persistent and ongoing pattern of legal complaints and litigation. Trump has publically threatened, Citizens for Responsibility and Ethics in Washington ("CREW") and its executive director, attorney Noah Bookbinder, with punitive and retaliatory measures, including revocation of CREW's tax exempt status, due to their petitioning activities. Crew and Bookbinder have engaged in actions and litigation against Trump and his associates that are similar, and in some cases nearly identical, to the actions and litigation I have engaged in.

87.    I was active in filing complaints and engaging litigation related to the Mueller investigation and I repeatedly provided information to the Special Counsel's office for the purpose of aiding the investigation. Trump has repeatedly taken punitive, retaliatory and unconstitutional actions against lawyers connected to the Mueller investigation.

88.    I initiated multiple complaints against Trump and Bondi with state and federal agencies, including advocating for criminal prosecution and other punishment. Pursuant to an executive order from the former Governor of Florida, Rick Scott, on December 26, 2016, State Attorney Stephen Russell was assigned to review one of my bribery complaints against Trump and Bondi. Trump has issued unconstitutional orders against and imposed punishments on lawyers he claims have engaged in weaponizaton of the law against him and have engaged in "lawfare."

89.     I filed legal complaints against officials in Trump's first administration including former White House Chief of Staff Reince Priebus, former Attorney General Jeffrey Session, former Trump attorney and advisor Rudy Giuliani, former National Security Advisor Michael Flynn, former Internal Revenue Service Commissioner Charles Rettig and former Administrator of the Environmental Protection Agency Scott Pruitt. Trump has issued unconstitutional orders against and threatened to impose punishments on lawyers who litigate against him and the federal government.

90.     I made legal complaints against members of Trump's family, his businesses and foundations and his campaign. This included legal complaints against Eric F. Trump, The Eric Trump Foundation, Donald J. Trump Foundation, Inc., The Trump Organization, Inc., Trump National Golf Club LLC, Donald Trump, Jr., The Trump Corporation and Donald J. Trump For President, Inc. Trump has issued orders against and imposed punishments on lawyers who have litigated against his campaign, companies and family foundations.

91.     Additional details of complaints and litigation that I am participating in and have participated in that are antagonizing to Trump and his agents in government are set forth in my Declaration, attached hereto as Exhibit "1."

92.     My DEI policy and program and my representation of immigrants are other factors that are antagonizing to Trump, according to the March 22 Memorandum, his public statements and his orders against specific law firms.

93.     Based on my past and ongoing activities as a lawyer, I match the profile of lawyers and law firms who have been objects of Trump's punitive executive orders and actions against lawyers and law firms. I have Article III standing because there is a credible, substantial

and certainly impending threat that Trump will issue punitive orders against me based on my profile and the pattern of punitive executive orders and actions outlined in this complaint and in the attachments to it.

94.     Courts have repeatedly recognized that a party who is the object of a government regulation or policy need not wait for enforcement to establish standing, as the threat of enforcement alone creates a credible, imminent injury-in-fact. As I am one of the many objects of the challenged executive orders and course of actions, its deterrent effect on my constitutionally protected conduct suffices to confer Article III standing.

95.     Trump's unconstitutional threats, orders and actions are injuring me by interfering with my law practice and by causing me to decline to represent some clients and to cease advocating for particular causes. They are injuring me by infringing on my freedom of expression and my right to practice my profession and earn my living as a lawyer.

96.     There is a growing need for assistance in the field of immigration law due to a recent increase in deportations, arrests and other government action against immigrants. I have some knowledge and skill in the area of immigration law. As a result of recent events, I intended to represent clients in their immigration law cases and I would like to do so in the future. I have been deterred from doing this by the defendants. Trump's orders and threats of penalties are injuring me by infringing on my right to associate for the purpose of assisting immigrants who seek legal redress for infringements of their constitutionally guaranteed rights.

97.     Between March 25, 2025 and April 7, 2025, I was approached by two different clients, "Client A" and "Client B." Each of these clients was seeking confidential advice and representation regarding issues related to visas and immigration. I declined to represent each of

these clients and referred them to another lawyer because of Trump's threats and orders against immigration lawyers. I declined to represent them because I was specifically afraid that Trump and Bondi might take steps to retaliate against them through the Department of Justice or the State Department if I represented these immigrants.

98.    I have delayed volunteering my legal services to clients through a non-profit called PAIR (Political Asylum/Immigration Representation), due to the threats, orders and the penalties Trump has imposed on law firms and lawyers whom previously opposed him. With the help of volunteer lawyers, PAIR provides free immigration services to indigent asylum seekers and detained immigrants. For the same reasons as I declined to represent Client A and Client B, I am declining to offer my services to clients through PAIR. This is an injury to me and to the clients that I will not represent because of the defendants' unconstitutional policies and actions.

99.    I am ready, and willing and able to represent certain immigration clients, but, Trump's threat of selective prosecution deterred me from undertaking to represent these clients, resulting in the denial of equal protection of the laws. The barriers that Trump has erected to my representation of immigrants are injuring me and my clients by denying us equal treatment. Unlike me and my clients, lawyers and firms that give Trump extortion payments and sing his praises are permitted to practice law without the fear of prosecution and punishment. Trump has injured me and my clients by making it unsafe for me to represent my clients in Immigration court.

100.    The Boston Immigration Court is located in the JFK Federal Building in Boston. The building is owned and managed by the U.S. General Services Administration. If I am prohibited from entering federal buildings by Trump, as has recently occurred with other

attorneys and law firms, I will not be able to properly represent clients with cases before the immigration court. Despite being a person of ordinary firmness, I am afraid, to undertake representing new clients, as these clients may be harmed if I am prevented from properly representing them by being banned from federal buildings. The impending threat of being banned from federal buildings has injured me and interfered with my law practice. Being banned from federal buildings would cause injury to any immigration clients with cases in federal buildings and would cause substantial harm to my professional and personal reputation.

101.    If federal officials are prohibited from communicating with me, as has occurred with other lawyers and law firms subject to Trump's recent orders, then I will not be able to properly represent my clients. Despite being a person of ordinary firmness, I am afraid to undertake representing new clients in immigration cases, as these clients will likely be harmed if I am prevented from communicating with officials in the Department of Justice, the State Department or elsewhere in the federal government. The threat of being prevented from communicating with federal officials and employees has injured me and interfered with my law practice. Being banned from communicating with federal officials would cause substantial harm to my professional and personal reputation.

102.    Trump's orders and statements prohibiting DEI policies, and threatening sanctions against lawyers who have such policies, abridges my freedom of speech, my freedom association and my right to petition the government for redress of grievances. My DEI policy and program is one of the means by which I communicate my values to potential clients, employees and contractors. The threat of being punished because of my DEI policy and program is causing damage to my reputation, a loss of goodwill in the community and a loss of valuable clients. The

threat of sanctions and penalties for having a DEI policy and program and using the words diversity, equity and inclusion has a chilling effect on my speech and petitioning activities. By prohibiting DEI policies at law firms, Trump is censoring my speech. Although I have a DEI policy, Trump's threats of prosecution and orders have caused me to capitulate to his demands and decline to represent particular clients. Trump has injured me by forcing me to abandon my DEI program and policy in those cases. I still intend to maintain a DEI policy and program.

103.    Trump's orders and schemes credibly threaten me with penalties for having DEI policies, representing certain clients, and advocating for particular causes and they arbitrarily interfere with my right to pursue lawful employment and engage in my chosen occupation. They deprive me of the right to work as a lawyer and to support myself while doing so. All of these are injuries.

104.    Through his orders, course of action and threats against lawyers, Trump has caused me substantial and ongoing psychological and mental injuries including fear and emotional distress.

105.    Trump's actions are designed to deter both government officials and private lawyers from participating in or carrying out new inquiries into his conduct. Trump's purposes are so obvious to the legal community that many lawyers and law firm leaders are afraid to speak out. On March 7, 2025, Law.com reported that "most law firm leaders are choosing to stay anonymous when speaking about the administration's orders[.]" Trump is silencing his critics with unlawful orders, penalties and threats. By threatening me and other attorneys in my class whom have been Trump's adversaries, and by unlawfully retaliating against his adversaries in the legal field due to their First Amendment activities, Trump has created a menacing

atmosphere and had chilling effect on the First Amendment activities of me and other lawyers. In this way, Trump has injured me by infringing on my First Amendment rights.

106.    I am monitoring the Trump administration closely, and would like to file additional complaints and engage in petitioning activity involving the administration. But, Trump is injuring me by deterring me from filing certain complaints and from taking other actions because of his orders and threats. Furthermore, I have a list of Trump administration officials who I believe have engaged in illegal and unethical conduct. Notwithstanding menacing orders and statements, I intend to file complaints against some of these officials who have engaged in particularly egregious misconduct and fear that I will be punished by Trump and his agents for doing so.

107.    Trump is injuring me by depriving my clients and threatening to deprive my potential clients of independent advice from an attorney of their choice in violation of their right to counsel.

108.    Trump's extortion is causing me injury by corruptly depriving me and my clients of his honest services as a government official.

109.    Trump's orders and his express threats on Fox News to go after lawyers and his pledge on Truth Social to prosecute lawyers to the fullest extent of the law show that there is a credible and certainly impending threat that Trump will issue punitive orders against me.

110.    Trump's March 22 Memorandum is specifically focused on lawyers and law firms that have litigated against the federal government in the prior 8 years, are engaged in immigration law or have diversity, equity and inclusion policies or programs. I fall within the classes of lawyers identified in the March 22 Memorandum. In light of Trump's recent orders

targeting particular law firms, and the fact that the March 22 Memorandum has not been rescinded or revoked, there is a credible and certainly impending threat that Trump will issue punitive orders against me based on the explicit threats of prosecution recited in Trump's March 22 Memorandum.

111.    Trump's written and oral threats against lawyers, the threats created by the March 22 Memorandum, and actual punishments imposed by targeted orders against specific individuals and law firms, are concrete facts showing that Trump's executive actions have caused a substantial risk of harm to me in this case.

112.    I have Article III standing to proceed with a pre-enforcement challenge to Trump's executive orders and the defendants actions' under circumstances that render the threatened retaliation, punishments and enforcement sufficiently imminent.

113.    I have Article III standing because I am challenging Trump's March 22 Memorandum and his other orders as facially unconstitutional, vague and overly broad because the orders substantially restrict protected speech, petitioning and associations in ways that deter me and could deter others from exercising their First Amendment rights.

114.    I have Article III standing because Trump has caused and is causing me to suffer from other concrete, identifiable, irreparable and ongoing injuries as are described in this complaint and the attached declaration.

115.    Trump has engaged in conduct that creates a case or controversy regarding the parties' rights and obligations that is ripe for adjudication under the Declaratory Judgment Act, 28 U.S.C. § 2201 and other laws and equitable principles described in this complaint.

116.    By impairing my independent judgment as a lawyer, Trump has caused me to suffer from ongoing mental injuries.

## VI. CAUSES OF ACTION

## COUNT 1

## VIOLATIONS OF THE FIRST AMENDMENT

117.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

118.    The litigation that I regularly engage in is a form of political expression that is protected by the First Amendment. Trump is violating my freedom of expression.

119.    Trump's threats of severe penalties deter free speech, association and petitioning activities almost as potently as the actual application of those penalties.

120.    The First Amendment prohibits retaliatory actions, including prosecution, threatened prosecution, bad faith investigation, and legal harassment that would chill a person of ordinary firmness. Trump's orders and schemes attacking lawyers are chilling my speech, petitioning and associations, and they would chill a person of ordinary firmness. The First Amendment prohibits the regulation or censoring of speech based on the specific motivating ideology or the opinion or perspective of the speaker. Such government action is a blatant and egregious form of content discrimination and is subject to strict scrutiny.

121.    Trump's orders, schemes, crusade, and course of action abridge my freedom of speech, freedom of association and violate my right to petition the government for redress of grievances under the First Amendment to the Constitution of the United States.

122.    I have suffered and I am suffering ongoing losses, harms and injuries as a result of these abridgments and violations of protections of the First Amendment.

## COUNT II

### *ULTRA VIRES* EXECUTIVE ACTION

### UNCONSTITUTIONAL EXERCISE OF JUDICIAL AUTHORITY

123.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

124.    This cause of action and the other causes of action are asserted against all of the defendants.

125.    The President's authority to act must stem either from an act of Congress or from the Constitution itself.

126.    There is no enumerated or inherent executive authority from the Constitution that allows presidents to regulate and to sanction lawyers for professional misconduct.

127.    Regulating the practice of law is not part of the President's core or incidental powers that are necessarily implied from the nature of the functions.

128.    Trump's orders against lawyers and law firms do not identify any constitutional or statutory source of authority.

129.    The Judicial Branch has the inherent authority to regulate the practice of law and has traditionally regulated it. This authority includes the ability to fashion an appropriate sanction and discipline for conduct which abuses the judicial process. No statute authorizes Trump's actions in imposing sanctions and discipline on lawyers for their professional conduct, and no statute authorizing them would be valid, because the power to sanction and discipline

lawyers for their professional conduct rests with the federal and state courts.

130.    Article III of the Constitution vests the judicial Power of the United States in the federal courts. That power enables courts to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.

131.    There is no authorization in the Constitution for presidents to arrogate judicial power unto themselves and to pronounce the guilt of other persons or groups based on the presidents' own beliefs or opinions.

132.    After insuring due process, it is the role of courts, not presidents, to impose punishments.

133.    Trump's orders against lawyers and law firms set forth in Exhibits "2," "3," "4," "5" "6" "7" and "8," and his schemes, as reflected in his statements and course of action, are *ultra vires* because there is no constitutional or statutory authorization empowering Presidents to retaliate against and punish lawyers for representing clients or for lawful their advocacy.

134.    Trump's orders against lawyers and law firms set forth in Exhibits "2," "3," "4," "5" "6" "7" and "8," and his schemes, as reflected in his statements and actions outside of those orders, are *ultra vires* because there is no constitutional or statutory authorization empowering Presidents to regulate the practice of law in the ways set forth in the orders.

135.    Trump's orders against lawyers and law firms set forth in Exhibits "2," "3," "4," "5" "6" "7" and "8," and his schemes, as reflected in his statements and actions outside of those orders, are *ultra vires* because there is no constitutional or statutory authorization empowering Presidents to regulate diversity, equity and inclusion practices in the ways authorized by the orders.

35

136.    The defendants' *ultra vires* executive action, as described herein, is an unconstitutional exercise of judicial authority that has caused ongoing harm and injury to me, to my clients and to people who would like to be and potentially will be my clients.

## COUNT III

## DEPRIVATIONS OF DUE PROCESS AND EQUAL PROTECTION

137.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

138.    This cause of action and the other causes of action are asserted against all of the defendants.

139.    Trump's March 22 Memorandum, executive orders and course of action against lawyers and law firms violate the Fifth Amendment guarantee of due process. There is a substantial and imminent threat that he will impose severe penalties upon me and other lawyers without notice or an opportunity to be heard in denial of our right to due process of law. Trump's orders, schemes, crusade, and course of action have deprived me of liberty and property without due process of law in violation of the Fifth Amendment to the U.S. Constitution.

140.    Based on the vague language in the March 22 Memorandum, and the actual punishments that Trump has imposed upon law firms in February and March of 2025, Trump could potentially impose an extraordinarily wide range of punishments on whichever lawyers and law firms that he chooses to punish. The vagueness and open ended nature of Trump's orders creates excessive and unreasonable uncertainty regarding the conduct that is prohibited by the orders and regulations and the potential punishments that lawyers and law firms will suffer if they violate them. Trump's actions and orders are so unconstitutionally vague and overly broad

that they fail to reasonably describe the conduct that is prohibited and have a chilling effect on freedom of speech.

141.    Trump's orders and actions do not provide me with a reasonable basis to understand what conduct is prohibited or how to avoid further sanctions in the future. The threat of sanctions and punishment for "diversity, equity and inclusion" is unconstitutionally vague and fails to provide me with adequate notice of the prohibited conduct.

142.    Trump's orders, schemes, crusade, and course of action violate my clients' due process rights under the Fifth Amendment and the common law to be zealously represented by counsel, to the independent judgment of counsel and to the counsel of their choice.

143.    The improper purpose and absence of any legitimate justification demonstrates that Trump's orders and schemes are an abuse of power that shocks the conscience, such that they cannot be justified by any level of process. By arbitrarily interfering with my right to pursue lawful employment and engage in my chosen occupation, and threatening to do so, the defendants are violating my right to substantive due process.

144.    Trump's orders, schemes, crusade, and course of action create a substantial and imminent threat that I will be selectively prosecuted by Trump and deny me equal protection in violation of Due Process guaranteed by the Fifth Amendment to the Constitution.

145.    I have suffered and I am suffering ongoing losses, harms and injuries as a result of being deprived of due process of law by the defendants.

## COUNT IV

## UNLAWFUL BILLS OF ATTAINDER AND *EX POST FACTO* LAWS

146.    All of the other allegations in the preceding paragraphs and other counts of this complaint are repeated, re-alleged and incorporated by reference as if fully set forth herein.

147.    The punishments retroactively imposed on lawyers and law firms in Trump's orders against them violate and imminently threaten to violate the prohibition on *ex post facto* laws and bills of attainder.

148.    The retroactive punishments imposed and threatened by Trump for alleged offenses and violations occurring 8 or more years prior circumvent 18 U.S.C. Section 3282 and other statutes of limitations applicable to civil and criminal offenses.

149.    I have suffered and I am suffering ongoing losses, harms and injuries as a result of the defendants' violations of Article I, Section 9, Clause 3.

## V. REQUEST FOR RELIEF

WHEREFORE, I respectfully request this court enter declaratory and injunctive relief as follows:

150.    Declare that the March 22, 2025, "Presidential Memorandum" titled, "Preventing Abuses of the Legal System and the Federal Court," is facially unconstitutional.

151.    Declare the extent to which the March 22, 2025, "Presidential Memorandum" titled, "Preventing Abuses of the Legal System and the Federal Court," is facially unconstitutional.

152.    Declare that the March 22, 2025, "Presidential Memorandum" titled, "Preventing Abuses of the Legal System and the Federal Court," is unconstitutional as applied to the plaintiff, J. Whitfield Larrabee.

153.    Declare the extent to which the March 22, 2025, "Presidential Memorandum" titled, "Preventing Abuses of the Legal System and the Federal Court," is unconstitutional as applied to the plaintiff, J. Whitfield Larrabee.

154.    Declare that the President's policy and course of executive action, punishing and threatening to punish attorneys and law firms based on their speech, associations, or client representation, violate the First Amendment to the Constitution of the United States.

155.    Declare the extent to which the President's policy and course of executive action, punishing and threatening to punish attorneys and law firms based on their speech, associations, or client representation, violate the First Amendment to the Constitution of the United States.

156.    Declare that the President's policy and course of executive action, punishing and threatening to punish attorneys and law firms based on their speech, association, or client representation, exceed his lawful authority under Article II of the Constitution and are *ultra vires*.

157.    Declare the extent to which the President's policy and course of executive action, punishing and threatening to punish attorneys and law firms based on their speech, association, or client representation, exceed his lawful authority under Article II of the Constitution and are *ultra vires*.

158.    Declare that any order limiting the plaintiff's access to federal buildings that is materially similar in language, purpose and effect to Section 5 of the President's Executive Order titled "Addressing Risks from Perkins Coie LLP," is unconstitutional.

159.    Declare that any order limiting government employees from engaging with the plaintiff that is materially similar in language, purpose and effect to Section 5 of the President's Executive Order titled "Addressing Risks from Perkins Coie LLP," is unconstitutional.

160.    Declare that the President's denial of access to for the plaintiff or other attorneys to U.S. government buildings based solely on the content of legal arguments, past litigation with the federal government, or political viewpoint, violates the First and Fifth Amendments.

161.    Declare that any formal or informal agreements, arrangements, deals, or understandings extracted from lawyers or law firms to support charitable, legal, or political causes favored by the President, under threat of punishment or retaliation due to First Amendment activities, as described in the complaint, are unconstitutional and void as contrary to the First Amendment and the Fifth Amendment guarantee of due process.

162.    Declare that Executive Orders punishing the plaintiff or other attorneys, similar in language, purpose and effect to the President's Executive Order titled "Addressing Risks from Perkins Coie LLP," are unconstitutional bills of attainder and violate the prohibitions in Article I, Section 9, Clause 3 of the United States Constitution.

163.    Declare that the President's selective enforcement of Executive Orders against lawyers and law firms violates the 5th Amendment guarantee of equal protection of the laws.

164.    Declare that the President's punishment of lawyers and law firms based on their DEI policies violates the First and Fifth Amendments.

165.    Declare that the President's policy of punishing lawyers and law firms based on their DEI policies is unconstitutional as applied to the plaintiff.

166.    Enjoin the Defendants from enforcing, implementing, or otherwise carrying out any orders, directives, or actions that target Plaintiff or similarly situated attorneys or law firms for punishment, exclusion, or retaliation based on their protected legal speech or representation.

167.    Enjoin Defendant Noem, in her official capacity, from directing or permitting any Department of Homeland Security agency—including but not limited to Transporation Security Administration, Immigration and Customs Enforcement, Customs and Border Protection, and Global Entry—to implement punitive measures against Plaintiff as a result of his legal advocacy or professional associations with clients.

168.    Enjoin Defendant Bondi, in her official capacity, from enforcing or facilitating the enforcement of any executive order, memorandum, or policy directive that unlawfully targets the plaintiff, attorneys or law firms for punishment based on their political expression, legal activity, or refusal to support the President's political interests.

171.    Enjoin Defendant Rubio, in his official capacity, from enforcing or facilitating the enforcement of any executive order, memorandum, or policy directive that unlawfully targets the plaintiff, attorneys or law firms for punishment based on their political expression, legal activity, or refusal to support the President's political interests.

172.    Enjoin Defendant Executive Office of the President, from enforcing or facilitating the enforcement of any executive order, memorandum, or policy directive that unlawfully targets the plaintiff, attorneys or law firms for punishment based on their political expression, legal activity, or refusal to support the President's political interests.

173.    Grant such other declaratory, equitable, or injunctive relief as is just, necessary, and appropriate to prevent further constitutional violations, to remedy ongoing harm, and to ensure Plaintiff is not subjected to retaliation or punishment for his protected First Amendment activity.

174.    Award Plaintiff his costs incurred in this action and a reasonable attorneys' fee.

DATED:   August 13, 2025

J. Whitfield Larrabee,

/ s /

*J. Whitfield Larrabee*

_____

J. Whitfield Larrabee
14 Searle Avenue
Brookline, MA 02445
jw.larrabee@verizon.net
(857) 991-9894
BBO # 553499

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/

*J. Whitfield Larrabee*

J. Whitfield Larrabee

Dated:  August 13, 2025